[No. 26505.   Department One.   April 6, 1937.]

THE STATE OF WASHINGTON, *Respondent,* v. L. J. MOORE, *Appellant,* RACHEL PORTER, *Defendant.*[1]

[1]Reported in 66 P. (2d) 836.

*H. E. T. Herman, Richard S. Munter, Cornelius E. Collier,* and *Justin C. Maloney,* for appellant.

*Ralph E. Foley* and *Leslie M. Carroll,* for respondent.

MILLARD, J.—Predicated upon the statute, which provides that:

"Every person who, with intent to deprive or defraud the owner thereof—

" . . . (2) Shall obtain from the owner or another the possession of or title to any property, real or personal, by color or aid of any order for the payment or delivery of property or money or any check or draft, knowing that the maker or drawer of such order, check or draft was not authorized or entitled to make or draw the same, or by color or aid of any fraudulent or false representation, personation or pre-

tense or by any false token or writing or by any trick, . . .

"Steals such property and shall be guilty of larceny." (Rem. Rev. Stat., § 2601 [P. C. § 8944].)

an information charging the defendants with the crime of grand larceny was filed in the superior court for Spokane county. The information reads as follows:

"That the said defendants, L. J. Moore and Rachel Porter, in the County of Spokane, State of Washington, on or about the 21st day of August, 1935, then and there being, did then and there wilfully, unlawfully and feloniously, with intent to deprive and defraud the owner thereof, obtain from the Security State Bank of Spokane, a corporation, personal property, to-wit: Five Hundred and Twelve Dollars and Fifty Cents ($512.50) in lawful money of the United States of America, the property of and belonging to Ray R. Porter, by color and aid of certain false and fraudulent representations, impersonations and pretenses, to-wit: by then and there representing that the endorsement 'Ray R. Porter' on a certain check dated August 9th, 1935, and drawn by C. W. John on the Citizens State Bank of Choteau, Montana, payable to the order of Ray R. Porter, in the sum of Five Hundred and Twelve Dollars and Fifty Cents ($512.50), was the genuine signature of the true Ray R. Porter, the payee of said check, and person entitled to receive the money on said check, when in truth and in fact the endorsement 'Ray R. Porter' was signed by the defendant, Rachel Porter, and was not genuine, and that neither the defendant, L. J. Moore, nor the defendant, Rachel Porter, were entitled to possession of said check or said money, and the Security State Bank of Spokane, a corporation, relying on said representations, impersonations and pretenses, paid over said money."

Rachel Porter pleaded guilty and received a suspended sentence of fifteen years in the state penitentiary. The trial of the other defendant resulted in a verdict of guilty as charged. Judgment was entered, sentencing Moore to confinement in the state peniten-

tiary for not more than fifteen years, which sentence is to be suspended during good behavior of the defendant. Moore appealed.

Counsel for appellant contend that, (1) as there is no evidence of any false pretenses by appellant in connection with the entire transaction, and (2) as the check in question was drawn in Montana and paid in Montana, only the courts of Montana have jurisdiction over the offense charged; therefore, the trial court's refusal to grant the motion in arrest of judgment was erroneous.

The verdict reflects acceptance by the jury as true of the following testimony: Rachel Porter and the appellant have been acquaintances since June, 1934. Appellant, who operated a furnace cleaning business, employed Rachel Porter as a solicitor during June and July, 1934, and from September, 1934, to November, 1934. When the appellant entered the mining business in the summer of 1935, Rachel Porter gave to the appellant ten dollars, to be used in grubstaking prospectors who were sent by appellant to locate mining claims. Rachel Porter was also known as "Ray" Porter.

Prior to August 17, 1935, on several occasions when she called at the general delivery box of the main postoffice in Spokane for her mail, she refused to accept certain letters addressed to one Ray R. Porter. On or about August 17, 1935, she accepted a number of letters addressed to one Ray R. Porter, which letters did not belong to her. In one of the envelopes she opened, she found a check in the amount of $512.50, payable to Ray R. Porter. This check was drawn on the Citizens State Bank of Choteau, Montana, and was signed by C. W. John. A letter of transmittal made reference to sugar, and on the face of the check, in the left-hand corner, were the words "Bal. Payment on House."

A few days later, Rachel Porter met the appellant

and informed him respecting the above described check and two other checks that were in other envelopes she had received. The appellant escorted her to his office, and she informed him how she obtained the checks, and he read the letter transmitting the check in the amount of $512.50. The conversation between Rachel Porter and the appellant was to the effect that they could use the money, and, to effectuate that purpose, Rachel Porter forged the name "Ray R. Porter" on the back of the check, in the presence of the appellant, who took same to the Security State Bank of Spokane, at which bank he had an account. He endorsed the check and attempted to cash it. The bank refused to cash the check, whereupon the appellant placed same with the bank for collection.

After the commission of the crime, the appellant and Rachel Porter rehearsed the story they would tell if they were called to account because of their offense. In furtherance of the completion of the recital they would make when discovered, a letter was written by the appellant to Rachel Porter and addressed to her as if she were in Los Angeles, California. The letter was handed to Rachel Porter by the appellant in his apartment in Spokane.

The foregoing, with the exception of the testimony respecting the refusal of the bank to accept the check other than for collection, is the testimony of Rachel Porter.

The Security State Bank made collection from the Citizens State Bank of Choteau, Montana, and deposited the amount collected, less a collection charge, to the credit of the appellant, who thereafter, over a period of ten days, checked out the entire amount. Subsequently, the Security State Bank was advised that the endorsement of "Ray R. Porter" was a forgery, and on December 10, 1935, the bank demanded that appellant

reimburse it for the amount of the check. After the demand was made, warrants were issued for the arrest of Rachel Porter and the appellant. The appellant reimbursed the bank after the issuance of the warrant for his arrest.

The story told by appellant Moore, when brought to trial, controverts the testimony of Rachel Porter. He testified that he was informed by Mrs. Porter that the money belonged to her and represented a part of the proceeds she had received from her former husband on account of a property settlement. He also testified that she agreed to lend to him, for use in the development of the mine, $412.50, but that the remainder of one hundred dollars she wanted to use for herself.

It was for the jury to determine which story, that of appellant or that of Rachel Porter, was true. It is not denied that the endorsement of Mrs. Porter is a forgery; in fact, that was established by the testimony of the true Ray R. Porter, the payee, who is a resident of Spokane.

Appellant knew that the endorsement of "Ray R. Porter" was a forgery, and that neither he nor Rachel Porter was entitled to possession of the check or the money. When, with that knowledge, he presented the check to the Security State Bank of Spokane for the purpose of obtaining the money on it, he thereby represented that he was a lawful holder of the check, the legal assignee of the true payee, and that he was entitled to possession of the check and the money that it represented. The representations he made were false. False pretenses may be made by conduct and actions as well as by word of mouth.

"The mere offering of the bill in payment of the obligations, 'amounts to an assertion or representation by conduct, which may be as efficacious to convey an idea, or to constitute the basis of a reasonable belief, as though exact and appropriate words had been used.

686

Words are used to express ideas. Signs might be used instead. Conduct that conveys necessarily the same idea, and intended to do so, is, by a substitute for the words or signs, expressive of it. We have no doubt but that the use of a worthless bill, pretending it is valid, and with the intent to defraud, is a false token under the statute.' " *State v. Hammelsy,* 52 Ore. 156, 96 Pac. 865, 132 Am. St. 686, 17 L. R. A. (N. S.) 244.

"The representation is inferred from the act, and the pretence may be made by implication as well as by verbal declaration." *Commonwealth v. Drew,* 19 Pick. (Mass.) 179.

See, also, *Williams v. Territory,* 13 Ariz. 27, 108 Pac. 243, 27 L. R. A. (N. S.) 1032.

█ It is argued that the story told by Rachel Porter was wholly uncorroborated. She was an accomplice of the appellant, and, while the testimony of an accomplice must be viewed with caution, a defendant may be lawfully convicted in this jurisdiction of a crime on the uncorroborated testimony of an accomplice. In so holding, in *State v. Hardung,* 161 Wash. 379, 297 Pac. 167, we said:

"Often, this is the only character of evidence that the state can produce, and, if the rule were otherwise, many criminals would go unpunished."

We find, however, that Rachel Porter's testimony was corroborated by the very check itself. Appellant testified that he believed that Rachel Porter received the check for her share of the proceeds of a business formerly conducted by her former husband. The words "Bal. Payment on House" were on the face of the check at the time Rachel Porter gave possession of that check to the appellant. Those words disclosed the reason for the issuance of the check and, patently, had nothing to do with the transfer business of Rachel Porter's former husband. Surely, this was corroborative of the testimony of Rachel Porter, and, doubtless, was one of the factors considered by the jury in its deter-

mination of the credibility of Rachel Porter and the appellant.

■ Counsel for appellant insist that the Spokane bank was the agent of appellant for collection, and that, if any offense were committed by appellant, it was committed by appellant, through his agent in Montana, when and where the check was cashed. In support of the position that an endorsement for collection is not a transfer of the title of the instrument to the endorsee, but merely constitutes such endorsee the general agent of the endorser to present the paper, demand and receive payment, and remit the proceeds, counsel cite Rem. Rev. Stat., § 3292-2 [P. C. § 4267-12], reading as follows:

"Except as otherwise provided by agreement and except as to subsequent holders of a negotiable instrument payable to bearer or indorsed specially or in blank, where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection and each subsequent collecting bank shall be sub-agent of the depositor but shall be authorized to follow the instructions of its immediate forwarding bank and any credit given by any such agent or sub-agent bank therefor shall be revocable until such time as the proceeds are received in actual money or an unconditional credit given on the books of another bank, which such agent has requested or accepted. Where any such bank allows any revocable credit for an item to be withdrawn, such agency relation shall nevertheless continue except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn."

We understand the position of appellant to be that the crime, if committed at all, was committed in Montana, where the money was obtained on the check by appellant's agent; therefore, the jurisdiction for trial of the appellant can be only in Montana, as the crime

of larceny by false pretenses is completed where the property is obtained and the information against the person making the false representations must be made within the jurisdiction where the property is obtained.

Counsel for the state argue that, even if it were conceded that the crime, of which appellant was convicted, was committed partially in Spokane county and partially in the state of Montana, the superior court for Spokane county would have jurisdiction for the trial of appellant for the offense under the provisions of Rem. Rev. Stat., § 2254 [P. C. § 8689], reading as follows:

"The following persons are liable to punishment:

"(1) A person who commits in the state any crime, in whole or in part.

"(2) A person who commits out of the state any act which, if after committed within it, would be larceny, and is afterward found in the state with any of the stolen property. . . .

"(5) A person who commits an act without the state which affects persons or property within the state, or the public health, morals or decency of the state, which, if committed within the state, would be a crime."

■ It is quite true that the Spokane bank received the check from appellant only as appellant's agent. It received the check for collection; therefore, the relationship between the Spokane bank and the appellant was that of agent and principal.

■ In *State v. Knutsen,* 168 Wash. 633, 12 P. (2d) 923, we were confronted with the general rule (16 C. J. 190; 11 R. C. L. 54) that the crime of obtaining money by false pretenses is completed where the property is obtained; hence, where the pretenses are made in one county and the property is obtained in another county, the information against the person making the false representations must be made in the county where the property is obtained.

At the early common law, a crime, which consisted of a series of acts, a part of which were in one county and a part in another county, could not be prosecuted in either county, unless enough transpired in one of the two counties to constitute a complete offense. 1 Bishop's New Criminal Procedure (2nd ed.), § 54, p. 29.

Generally speaking, at the common law, criminal offenses were deemed to be local, subject to prosecution only in the county where committed. To meet that situation, the rule was changed in this state by statute (Rem. Rev. Stat., § 2013 [P. C. § 9391]) to provide that, where a public offense is committed partly in one county and partly in another county, the jurisdiction is in either county. In the case cited *(State v. Knutsen, supra)*, we held that, where one was charged with the crime of grand larceny by false pretenses, the false representations being made in King county and the victim being induced to part, because of such false representations, with real property in Whatcom county in exchange for real property owned by the defendant in King county, there was not a completed offense in either Whatcom or King county, as an essential element of the crime was lacking in both counties.

■ However, while there could be no crime of obtaining property by false pretenses if either element— a false representation or the delivery of the property —was absent, the constitutional guaranty of a trial of the defendant in the county in which the crime is alleged to have been committed is satisfied when part of the acts constituting the crime are performed in the county in which the information is brought against the defendant.

■ Nor do we think Rem. Rev. Stat., § 2254 [P. C. § 8689], which was enacted to meet just such a situation as obtains in the case at bar, offends against the sixth amendment to the constitution of the United

States, which provides, in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed. In the absence of a statute, the rule is that a person cannot be punished in the state where he does some act constituting a part of an offense or making the offense possible, if the offense were actually consummated in another state.

"But where an act is made up of a series of events, and is criminal in its result, all the occurrences leading up to the consequence need not have been done in the jurisdiction where it is sought to be punished, but it is enough if the result constitutes an offense under its laws. . . . A person, who in one state does an act which takes effect and constitutes a crime in another state, may be punished in the latter state. And a person who commits a crime in one state for which he may there be punished, is liable for its continuous operation in another state. And statutes in some of the states provide for the punishment of persons who commence an offense in the state which is consummated out of it, or make all persons who commit in whole or in part, any crime within the state liable to punishment under its laws." I Brill, Cyclopedia Criminal Law, § 287.

■ The delivery to appellant's agent, the Spokane bank, by the bank in Montana of the $512.50 on the check in question, was a delivery to appellant's agent at appellant's request, and constituted a larceny of the $512.50. While in some jurisdictions it is held that the delivery to the. agent completed the offense at the point of such delivery, and that prosecution of the defendant could be had only at such point, there is other authority to the effect that the delivery in such cases is only partial or conditional; and that, therefore, the offense may also be prosecuted in the state

where the offender received the property from his agent.

"The offense of obtaining money or property by false pretenses is committed and must be prosecuted where the money or property is obtained, irrespective of where the person committing the offense may be, or where the pretenses are made. Ordinarily, therefore, when the pretenses are made in one state or county and the money or property is obtained in another, the offense may and must be prosecuted in the latter state or county, and an indictment will not lie in that jurisdiction where the pretenses were made. This rule has been changed by statute in some states. But even where the statutes of the state in which the pretenses are made provide for the punishment of persons who commit within the state any crime in whole or in part, it has been held that an indictment will not lie there if the property is obtained in another state unless the acts charged against the defendant constitute a crime of equal degree in the latter state.

"In several cases it has been held, to sustain jurisdiction, that delivery to a carrier or agent for defendant at his request is a delivery to defendant and completes the offense at the point of such delivery, and it has been further held that in such a case the prosecution not only may but must be had at the point of such delivery. But it has also been held that the delivery in such case is only partial or conditional, the owner's right of stoppage in transitu remaining, and that therefore the offense may also be prosecuted in the state where the offender receives the property from the carrier.

"It has been held by some courts that where the money or property is sent to the defendant by mail the offense is complete in the state and county where it is deposited in the mail, and may be prosecuted there, on the ground that the postmaster is the agent of the defendant to receive it. But it has also been held that where a draft is sent to the defendant by mail, the money represented by it is received in the jurisdiction where the draft is received and cashed.

"In the absence of statute, a person who obtains

goods by false pretenses in one state or county, and carries them into another, is not guilty in the latter of the offense of obtaining goods by false pretenses. But it is sometimes provided by statute that a person who brings into the state money or property so obtained in another state must, on conviction be punished as though he had stolen the same, and that a person committing the offense may be indicted and tried in the county in which he resides or in any county into which he brings or causes to be brought any part of such money or property." I Brill, Cyclopedia Criminal Law, § 308, p. 541.

Under our statute, a person, who obtains goods by false pretenses in another state and brings into this state money or property so obtained in the other state, may be punished in this state as though he had stolen the same within this state. He may be informed against and tried in the county into which he brings, or causes to be brought, any part of such property thus stolen in another state.

A necessary element of the crime of larceny of property by false pretenses is the false representation which was made in the state of Washington. The delivery of the property, an essential element of the crime, was effectuated in Montana when the property was delivered to appellant's agent. An essential element of the crime of larceny of property by false pretenses was lacking, it is true, in both states. To eliminate the twilight zone, the haven that would be afforded criminals who obtain delivery of property in one state through false pretenses made in another state, was the purpose of the legislature in enacting Rem. Rev. Stat., § 2254 [P. C. § 8689], as was the purpose expressed by the legislature in Rem. Rev. Stat., § 2013 [P. C. § 9391], to permit prosecution in either county when a crime, which consisted of a series of acts, was committed, partly in one county and partly in another county. As stated above, § 2254 does

not offend against the sixth amendment to the constitution of the United States.

The acceptance of appellant's theory, that the larceny, if committed, was committed in Montana at the time the money was received by the Spokane bank on the check in question from the Montana bank by appellant's agent, can afford no comfort to appellant. When appellant, through his innocent agent, stole the property in Montana, he was, it is true, guilty of larceny in that state; and, under the statute (Rem. Rev. Stat., § 2254 [P. C. § 8689]), appellant is guilty of larceny in this state into which the stolen money was carried and delivered to appellant by his innocent agent.

"In the absence of a governing statute, some courts have held that the carrying of property stolen in one state or territory into another state or territory is not larceny in the latter. But most of the courts have held that it is larceny in the state into which the goods are carried. In most of the states, the question is now set at rest by statutes expressly declaring it to be larceny to bring into the state goods stolen in another state. And these statutes have been held constitutional. They do not undertake to punish the offense committed in the other state, but punish the bringing of the stolen goods into the state. This has also been held to be the rule where the statute provides for the punishment of crimes committed elsewhere but consummated within the state. Where this rule obtains, a person who steals goods in one state, and sends them into another state by an innocent agent, is guilty of larceny in the latter state, . . . " I Brill, Cyclopedia Criminal Law, § 315, p. 555.

The judgment is affirmed.

STEINERT, C. J., MAIN, BLAKE, and GERAGHTY, JJ., concur.