THE STATE OF WASHINGTON, *Respondent*, v. ELLSWORTH J.
ROBINSON, *Petitioner*.

*Malcolm L. Edwards*, by *Richard L. Barbieri*, for petitioner.

*Christopher T. Bayley, Prosecuting Attorney*, and *David Boerner, Chief Criminal Deputy*, for respondent.

STAFFORD, J.—Ellsworth Robinson, a Seattle police officer, was convicted on one count of asking for and receiving bribes in violation of RCW 9.18.020. Division One of the

Court of Appeals affirmed the conviction in *State v. Robinson,* 9 Wn. App. 644, 513 P.2d 837 (1973).

The day after the jury returned its verdict the trial judge informed defendant and counsel of the following facts which give rise to this appeal. We quote from the statement of facts:

THE COURT: Gentlemen, I have called you because when the jury yesterday announced that it had reached a verdict, the foreman asked the bailiff if they could also give me a note asking for clemency for the defendant. The bailiff was at the door of the jury room, I was over here, and she asked me. And I said, "Yes, that's all right, tell them that they can." And so she told them that they could pass a note along with the verdict.

When the verdict was handed by the foreman to the bailiff and by the bailiff to me, it had with it a note[1] which when I read it did not conform to what they had asked, and since it was directed to me I didn't have it read because I was a little surprised at it and wanted to decide what I should do, how I should treat it.

I have since considered it, and I have talked to a couple of other judges, because this is a rather unusual type of note to receive from a jury, and have decided that it should be filed in the case and treated just as any other communication that any member of the jury might send to the Court.

. . .

I debated whether this constituted impeaching the verdict or not. I have decided that this is a matter to be considered by the Court at a subsequent time, and that counsel are entitled to know of it, the circumstances under which it was submitted, and to take whatever action they deem appropriate in connection with it. This is the reason why I called you.

Thereafter, defendant moved for entry of a verdict of not guilty, moved for a judgment n.o.v. and for a new trial,

---

[1]The note read as follows:

"In finding the defendant guilty on Count I, we, the jury, could, by the evidence and testimony admitted *only* find him guilty of the crime of accepting drinks while in uniform in the Golden Horseshoe Tavern after legal closing hours and on Sundays, thus neglecting and violating his official duty."

each of which was denied. He then appealed unsuccessfully to the Court of Appeals following which we granted a petition for review.

Defendant contends the jury's note contradicts and is inconsistent with its verdict. On the other hand, the State maintains that the note is no more than a recommendation of leniency which should be treated as surplusage. *State v. Schut,* 71 Wn.2d 400, 429 P.2d 126 (1967).

For the reasons set forth below we reverse both the trial court and the Court of Appeals and remand the cause for a new trial.

The trial judge was "surprised" by the contents of the note that accompanied the verdict. He was concerned about the manner in which he "should treat it." After discussing the problem with "a couple of the other judges" he decided to deal with it "just [the same] as any other communication that any member of the jury might send to the Court." As a result, he deemed it to be a mere expression of the jury's originally stated desire to recommend leniency, and thus to be dealt with as surplusage. *State v. Schut, supra.* Significantly, however, the note's meaning was sufficiently lacking in clarity that it caused the judge to pause until the next day before deciding how to deal with it.

Defendant argues that there is a second interpretation of the note that would call for a verdict of not guilty. He contends that in addition to the general verdict of guilt the jury also rendered a "special verdict," on "special finding of fact" (*i.e.*, the jury's note), in which it found defendant guilty only of accepting drinks while in uniform, thus neglecting and violating his official duty. So, defendant urges, an essential element of the charged crime of bribery is missing, *i.e.*, that the drinks were accepted upon an agreement or understanding that defendant's official actions would be influenced thereby. RCW 9.18.020.

Based on the foregoing, defendant asserts, that since the "special verdict" based upon "special findings of fact" is inconsistent with the general verdict of guilt, the special verdict must control, citing RCW 4.44.440.

> Special verdict controls. When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.

This, it is said, would require a verdict of not guilty.

█ Defendant assumes too much. Denominating the jury's note a "special verdict" or "special finding" does not make it one. Quite the contrary, the cases that have dealt with RCW 4.44.440 make it quite clear that "special verdicts" and "special findings of fact" in support thereof stem from special interrogatories submitted to juries by the court. They are not volunteered by juries at will and presented to the court. In fact, juries are not authorized to make "special findings" on their own initiative. *Rowe v. Safeway Stores, Inc.*, 14 Wn.2d 363, 128 P.2d 293 (1942). Thus, the rule cited by defendant is not applicable because the jury's note is not a "special verdict" or a "special finding" within the meaning of the statute. *See also* CR 49.

█ Even if we were to assume that the jury's note amounted to a "special verdict" or "special finding of fact" in support thereof, defendant's interpretation of the note could not prevail and thus support a verdict of not guilty. At worst, the note is reasonably subject to two interpretations. The first is consistent with a mere request for leniency (and thus consistent with the verdict of guilty). The second is consistent with defendant's contention that he was found guilty only of accepting drinks on duty (which would be insufficient to support a charge of bribery). We have held, however, that where a special verdict is susceptible of two constructions, one of which will support the general verdict and the other of which will not, we will give such construction as will support the general verdict. *McCorkle v. Mallory*, 30 Wash. 632, 71 P. 186 (1903). It is clear that a "special finding of fact" will not be deemed to control a general verdict unless it is so irreconcilably inconsistent that it cannot be otherwise interpreted. *Houston v. New York Life Ins. Co.*, 159 Wash. 162, 292 P. 445 (1930).

Since there are two reasonable interpretations, we must accept the one consistent with the general verdict of guilty.

■ This, however, does not resolve the basic problem stemming from the events that gave rise to the note. The trial judge reported the jury foreman announced that a verdict had been reached, *before* asking whether the jury could recommend leniency. A majority of the jury appears to agree with that order of events. Nevertheless, this does not dispose of the critical question of whether the court's unqualified permission to recommend leniency, or the possibility thereof, affected some reluctant juror's vote. Even if the above mentioned order of events is correct, the question remains because a jury's action does not become a verdict until it is finally rendered in open court and received by the trial judge. *Bino v. Veenhuizen,* 141 Wash. 18, 250 P. 450, 49 A.L.R. 1297 (1926); *State v. Badda,* 68 Wn.2d 50, 411 P.2d 411 (1966). RCW 4.44.400.

■ If the trial judge deemed it proper to permit the jurors to recommend leniency, he also should have informed them that in arriving at a verdict they should not consider the matter of punishment; that sentencing is the function of the judge; and, that the court is not bound by recommendations of leniency. However, this was not done. Rather, in the absence of defendant and his counsel, the court made an unqualified affirmative response to the inquiry. Whether the response actually triggered the ultimate verdict or simply prevented some wavering juror from retracting his or her decision is not important. Clearly, there was more than a possibility of prejudice to the defendant.

The facts herein are remarkably similar to those in *United States v. Glick,* 463 F.2d, 491, 493-94 (2d Cir. 1972), in which the court commented in reversing the conviction:

> [W]e are convinced that the judge's bare assertion that the jury could recommend leniency, omitting any limiting or restricting admonitions and given in [the defendant's] absence, was highly prejudicial.
> . . . Our holding [is] no more than an application of the familiar rule that a verdict of guilty cannot stand

if it has been induced by any intimation from the trial judge that a light sentence might be imposed, thus encouraging a juror to abandon his vote of not guilty.

. . .

[The judge's] over-simplistic "yes" response to the jury's inherently dangerous inquiry opened the way to "unlock" the jury. . . . In short, there was a total failure to make clear to the jury that its function was to decide guilt or innocence and that sentencing was the judge's province and his alone. . . . Accordingly, under the circumstances present here, the likelihood existed that "one or more jurors entertaining doubts as to appellants' guilt agreed to vote for conviction because [they believed] they had it in their power to soothe their consciences by causing little or no punishment to be imposed."

(Final brackets appeared in text. Footnote omitted.) Further, where this issue has been raised in other courts, it has been held that it is reversible error to inform a jury that it may recommend leniency without also advising them that the recommendation is not binding on the court and that the judge has sole authority with respect to sentencing. *See People v. Sherwood*, 271 N.Y. 427, 3 N.E.2d 581 (1936); *People v. Lynch*, 284 N.Y. 239, 30 N.E.2d 577 (1940); *United States v. Glick, supra,* and cases cited therein.

We agree that under the circumstances before us the unqualified permission, given in the absence of defendant and his counsel, was reversible error.

Defendant also argues that it was reversible error for the trial judge to communicate with the jury in the absence of defendant and his counsel, citing RCW 10.46.120; *State v. Wroth*, 15 Wash. 621, 47 P. 106 (1896), and *State v. Waite*, 135 Wash. 667, 238 P. 617 (1925).[2] While we do not condone such action, we are certain that it will not be repeated on retrial. Inasmuch as we are reversing the conviction on other grounds, it is not necessary to discuss this issue further.

---

[2] On the subject of negative responses, as opposed to the affirmative responses attacked herein, *see State v. Colson*, 9 Wn.2d 424, 115 P.2d 677 (1941); *State v. Lewis*, 37 Wn.2d 540, 225 P.2d 428 (1950).

The conviction is reversed and the case is remanded for new trial.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.