[No. 3757-1. Division One. September 7, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR F. SWANSON, *Appellant*.

*Kempton, Savage & Gossard* and *James S. Kempton,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael Cohen, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The defendant, Arthur F. Swanson, is an attorney at law and certified public accountant who practiced his profes-

sions in Spokane, Washington.[1] At a trial in King County, he was convicted of the crime of making and publishing a false report of a corporation. On this appeal, he questions various aspects of the statute under which he was brought to trial in this state and the statute under which he was charged and convicted.

There is no substantial dispute as to the essential facts out of which the charge arose. The defendant's own testimony included the following.

Northwest Pacific Capital Corporation was a Washington corporation which officed in Bellevue, Washington. It had approximately 12 shareholders. Each shareholder was a developer or promoter and each of them brought some kind of what were referred to as "deals" into the corporation with him.

For the most part, these deals consisted of certain contingent rights to purchase a wide variety of properties. The properties that such purchase rights related to included a motel, apartment house, ranch, timber and mining rights, patent, manufacturing and sales rights, and the like.

Some of these deals were evinced by earnest money agreements and others by options to purchase. Some of the options to purchase were oral only.

Each of the deals shared a common characteristic—money was needed to finance it. The shareholders did not individually have the money to exercise their rights of purchase— or to "close the deals" as they phrased it. It was their expressed hope that by banding together and working through one corporation in this fashion, they could somehow collectively obtain the financing which individually had eluded them.

Each of the shareholders in Northwest Pacific Capital Corporation was also an officer and a director in the corporation. There was a president, a secretary, and a treasurer. All of the rest of the shareholders were vice-presidents.

The defendant, in addition to being a shareholder who

---

[1]The defendant herein is *not* Arthur D. Swanson, the King County attorney.

had himself brought a real estate deal into the corporation, was the treasurer and a member of the board of directors. The defendant was also attorney for the corporation, and being a certified public accountant was the one who prepared its balance sheets.

Another of the shareholders, officers, and directors, Sheldon Reeves, along with two other persons, went to Canada to negotiate with banks there in an effort to obtain the financing needed by the corporation. On Reeves' return, it was reported that one or more Canadian banks were prepared to commit a line of credit up to $5 million to finance some of the corporation's deals.

The defendant was asked to draw up a financial statement showing the various deals the corporation had under its control so that it could be given to the Canadian bank or banks in connection with obtaining the line of credit. He flew from Spokane to the corporation's Bellevue office where he dictated and directly supervised the typing of a document entitled: "Northwest Pacific Capital Corporation Balance Sheet, November 29, 1973."

In this document, which the defendant prepared, each of the deals the corporation had under its control was listed as a property in the "asset" column at the value ascribed to the property by the shareholder who had brought in the deal. Each deal was likewise listed in the "liability" column at the amount it would require to make the purchase or close the particular deal.

Nowhere on the balance sheet was it indicated in any fashion that the properties there listed were merely contingent rights to purchase or that the corporation did not actually own the properties. The result was that the balance sheet showed corporate assets of some $48 million, liabilities of $8 million and a surplus or net worth of $40 million.[2] At the time, the assets which were in fact fully owned by the corporation had a value of less than $30,000.

The defendant wrote a letter addressed to the directors

[2]For convenience, the figures here used have been rounded and approximations used.

and over his signature as a certified public accountant. It commenced:

> Enclosed is a balance sheet showing the financial condition of Northwest Pacific Capital Corporation as of November 29, 1973.

Although the letter did contain some language of qualification and disclaimer, nowhere in it nor on the balance sheet attached to the letter was there any indication that the defendant was also an officer, director, and shareholder in the corporation whose balance sheet he had prepared.[3]

All of the directors except the defendant signed the balance sheet on lines provided for that purpose.

The defendant knew the letter and balance sheet were prepared for Reeves to take to Canada for presentation to a bank or banks there in connection with efforts to obtain the hoped for $5 million corporate financing. The defendant also testified that he concurred with the corporate decision to send these to Canada.

The record before us reflects little of what transpired in Canada except for a stipulation that the balance sheet "was

---

[3]The full text of the defendant's letter reads:

"November 29, 1973

"Board of Directors
"Northwest Pacific Capital Corporation
"Bellevue, WN 98009
"Dear Sirs:

"Enclosed is a balance sheet showing the financial condition of Northwest Pacific Capital Corporation as of November 29, 1973. This is based on cost wherever possible and on reasonable valuations as represented by Corporation members or third parties including appraisals by qualified persons.

"While the figures are thought to be reasonable and conservative time did not permit a thorough audit according to accepted auditing standards. Because of the lack of these auditing procedures I have precluded from stating any opinion as to the fairness of this statement as a whole.

"Respectfully submitted,
"/s/Arthur F. Swanson

"Arthur F. Swanson
"Certified Public Accountant
"S. 310½ Cedar Street
"Spokane, WN 99204
"AFS/nmg"

presented to the Toronto Dominion Bank, City Savings & Trust of Calgary, and Bank of Nova Scotia in Calgary, by Sheldon Reeves, . . ." and the two others, and the fact that all three were promptly arrested by Canadian authorities. Following that, the present charge was filed by the King County Prosecuting Attorney against the defendant. Evidently like charges were filed against several of the other directors as well.

The defense presented by the defendant was that the balance sheet was intended to be only an inventory of the corporation's deals and the defendant did not knowingly or otherwise make any false or exaggerated statements therein. As the defendant testified, the document was supposed to be a "pro forma" balance sheet, but because of the haste with which it had been prepared, the qualifying term "pro forma" was inadvertently omitted from it.

The defendant defined "pro forma" as a kind of forecast —what the balance sheet would look like if certain conditions happened in the future—the conditions in this case being the exercise by the corporation of the various options to purchase. The defendant also testified that the document was not intended for the use of the public or for the use of anyone in the state of Washington except the corporate directors themselves.

This case presents five basic issues.

### ISSUES

ISSUE ONE. Was sufficient evidence introduced to sustain the defendant's conviction of violating RCW 9.24.050, making it a crime to make and publish a false report of a corporation?

ISSUE Two. Do courts of this state have jurisdiction of the offense charged since there was no publication of the balance sheet inside the state of Washington to anyone except the corporate directors who concurred in it?

ISSUE THREE. Are either RCW 9.24.050, defining the offense charged, or RCW 9.01.050(1), under which the courts of this state took jurisdiction of the offense, unconstitutional or otherwise invalid?

Issue Four. Did the trial court err in its instructions to the jury or in failing to give defendant's proposed instructions?

Issue Five. Did the trial court err in permitting it to be established on cross-examination of a defense witness that the witness stood separately charged with the same offense as the defendant?

## Decision

Issue One.

Conclusion. The trial court did not err in denying defendant's challenge to the sufficiency of the State's evidence and in refusing to direct a verdict for the defendant.

The defendant challenges the sufficiency of the evidence to sustain the conviction and seeks dismissal of the charge on various bases. This requires some analysis of the nature of the offense charged.

The statute under which the defendant was prosecuted reads:

> False report of corporation. Every director, officer or agent of any corporation or joint stock association, and every person engaged in organizing or promoting any enterprise, who shall knowingly make or publish or concur in making or publishing any written prospectus, report, exhibit or statement of its affairs or pecuniary condition, containing any material statement that is false or exaggerated, shall be punished by imprisonment in the state penitentiary for not more than ten years, or by a fine of not more than five thousand dollars.

RCW 9.24.050.

This statute has heretofore been construed in only two appellate opinions, *State v. O'Brien*, 143 Wash. 636, 255 P. 952 (1927) and *State v. Pierce*, 175 Wash. 461, 27 P.2d 1083 (1933).

Considering those two opinions together, we synthesize their rationale and holdings as to RCW 9.24.050 as follows: (a) this statute, which makes it a crime to make and publish a false report of a corporation, was enacted for the purpose of protecting members of the public who may have occasion to rely on such statements but not be conver-

sant with the corporation's affairs; (b) it does not apply to statements made to shareholders and directors; (c) it does not apply to statements which are not published at some time and in some manner; (d) before there can be a violation of the statute, it must be proven that the statement was willfully, knowingly, and falsely made, published, and concurred in; and (e) the statute does not require that an intent to deceive or defraud be proven as an element of an offense thereunder. *State v. O'Brien, supra; State v. Pierce, supra.*

The trial court instructed the jury concerning the elements of the offense as follows:

To convict the defendant, Arthur [F.] Swanson, of the crime of making and publishing a false report of a corporation the state must prove beyond a reasonable doubt:

(1) That on or about the 29th day of November, 1973, the defendant was an officer, director and agent of a corporation, Northwest Pacific [Capital] Corporation;

(2) The defendant unlawfully and feloniously made a written report or statement of the affairs and financial conditions of Northwest Pacific Capital Corporation with the intent that it be published;

(3) The defendant knew that the report or statement of the affairs and financial condition of Northwest Pacific Capital Corporation contained material statements which were either false or exaggerated;

(4) The above acts occurred in King County, Washington; and

(5) That said report or statement was published.

If you find from the evidence admitted in this case that the state has proved beyond a reasonable doubt each of said elements (1), (2), (3), (4) and (5) then it will be your duty to return a verdict of guilty of making and publishing a false corporate report as charged in the information.

If you find from the evidence that the State has not proved beyond a reasonable doubt the foregoing elements, then it will be your duty to return a verdict of not guilty as to the information.

Instruction No. 3.

The jury was further instructed:

> As used in the information in said cause and these instructions, "unlawfully and feloniously" means intentionally and purposely, but not accidentally, and without and beyond the authority of law.

Instruction No. 9.

Contrary to the position taken by the defendant on this appeal, the law did require, and the jury was instructed, that the unlawful act had to be knowingly committed and done intentionally, purposely, and not accidentally.

The defendant next contends that the required publication element of the offense was not proven because the balance sheet was not published to the general public. He argues that as a matter of law the presentation of it to the Canadian bankers was insufficient to constitute publication. This argument fails because the jury was instructed as to the meaning of this term as follows:

> The term "publish" as used in this information and these instructions means to make public; to make known; to put in circulation; to intentionally exhibit.

Instruction No. 5.

No exception was taken to this instruction, therefore, it became the law of the case. *Seattle v. Harclaon,* 56 Wn.2d 596, 597, 354 P.2d 928 (1960); *State v. Robinson,* 9 Wn. App. 644, 648, 513 P.2d 837 (1973), *rev'd on other grounds,* 84 Wn.2d 42, 523 P.2d 1192 (1974). Under the broad definition of the term "publish" in the court's instruction, the jury could well find that presentation of the balance sheet to the bankers did constitute a "publication." Furthermore, as noted in a somewhat analogous situation in *State v. Pierce, supra* at 468:

> Whether the financial statement was mailed, given out by hand, or otherwise distributed to five persons, or five thousand, is immaterial in a prosecution under [RCW 9.24.050].

In determining the sufficiency of the evidence generally to sustain the conviction, our function as an appellate court is to determine whether there is "substantial

evidence" to support the State's case; and in considering such evidence, we must assume its truth and view it most strongly against the defendant, allowing the State the benefit of all reasonable inferences. *State v. Randecker*, 79 Wn.2d 512, 515, 487 P.2d 1295 (1971); *State v. Sims*, 14 Wn. App. 277, 281, 539 P.2d 863 (1975).

Here the evidence established that the defendant's letter, which accompanied the balance sheet, was written in his capacity as a certified public accountant. (See footnote 3.) He left his signature off the balance sheet, although apparently all of the directors signed that sheet excepting only the defendant, and a line had been provided on the sheet for an additional signature. There was testimony that a certified public accountant who prepares a balance sheet for a corporation in which he is a shareholder, officer, and director violates his professional obligation of independence. There was evidence that the defendant was not a novice in corporations of this kind and that he had considerable first-hand knowledge concerning most of the various deals that he listed on the balance sheet. There was also evidence showing that he had prepared "pro forma" balance sheets before, had labeled them as such, and was aware of how to do this and of the necessity for doing so.

The guilty verdict established that the jury did not believe the defendant's testimony concerning inadvertence, lack of knowledge, and innocent intent. In making that determination, the jury was performing a function assigned to it under our judicial system, and one with which this court may not interfere on the present record. *State v. Woody*, 73 Wn.2d 179, 181, 437 P.2d 167 (1968); *State v. Sims, supra* at 282.

The jury was correctly instructed as to the elements of the offense charged. The evidence produced by the State viewed in the light most favorable to the State, as it must be, meets the legal test of sufficiency. The trial court correctly declined to dismiss the charge against the defendant.

ISSUE Two.

CONCLUSION. When an essential element of an offense has

been committed in the state of Washington, the offense has been committed "in part" in this state as contemplated by RCW 9.01.050(1) and the courts of this state have jurisdiction over the subject matter of the offense.

The concept of jurisdiction of courts is generally split into two branches, jurisdiction over the subject matter and jurisdiction over the parties, and to properly act in a case it is necessary that a court be vested with both jurisdictions. 20 Am. Jur. 2d *Courts* § 105 (1965). *See Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968).

The courts of this state unquestionably have jurisdiction over the parties since the defendant has resided here at all times in issue. The defendant argues, however, that our courts have no jurisdiction over the subject matter of the action because publication of the corporate report was essential to a completed offense and inasmuch as such publication occurred in Canada and not within this state.

It is true, as has been pointed out by our State Supreme Court, that

[i]n the absence of a statute, the rule is that a person cannot be punished in the state where he does some act constituting a part of an offense or making the offense possible, if the offense were actually consummated in another state.

*State v. Moore*, 189 Wash. 680, 690, 66 P.2d 836 (1937).

However, as also pointed out in *Moore*, we do have such a statute in this state. It reads in pertinent part:

The following persons are liable to punishment:
(1) A person who commits in the state any crime, in whole or *in part.*

(Italics ours.) RCW 9.01.050(1). The purpose of this statute is to eliminate twilight zones affording safe haven to persons who commit offenses partly within this state and partly without it. *State v. Moore, supra* at 692.

The defendant also questions whether the offense was even committed "in part" in this state. As his argument goes, what was done in this state

was merely preparatory to and did not approach the "culminating act" of "publishing" in the Dominion of

Canada, and additionally, since the "publishing" of a false corporate financial report is the nexus of the crime, and there was no "publication" in the State of Washington, or in the United States of America, that there was no crime committed which is cognizable in the State of Washington.

██ We agree that before the courts of this state have jurisdiction of an offense, more must be done within our state than just preparing for the commission of a crime elsewhere.

When an essential element of an offense has been committed within the state of Washington, the offense has been committed "in part" in this state, within the contemplation of RCW 9.01.050(1), and the courts of this state have jurisdiction over the offense. *State v. Booher*, 148 Wash. 149, 268 P. 167 (1928); *State v. Moore, supra*; 21 Am. Jur. 2d *Criminal Law* § 385, at 404 (1965); 4 R. Anderson, *Wharton's Criminal Law and Procedure* § 1507, at 88 (1957). As noted in 21 Am. Jur. 2d *Criminal Law* § 385, at 404:

> It is necessary, however, to discriminate with great care between acts essential to the crime and acts merely incidental thereto.

It is true, as defendant points out, that the publication of the corporate report containing the allegedly false statements is a requisite element of the offense charged. It is also true, however, that

> the material elements of the offense are in making, or concurring in the making, of the false statement and publishing or causing its publication.

*State v. Pierce*, 175 Wash. 461, 467, 27 P.2d 1083 (1933).

██ In the present case, the statements found by the jury to have been false were made by the defendant in this state, and with his concurrence in this state were sent to Canada to be shown to bankers there. Since these were essential elements of the offense charged, and were not merely preparatory or incidental thereto, the offense was committed in part within this state. Thus, our courts prop-

erly have jurisdiction over the offense of which the defendant was convicted. RCW 9.01.050 (1).

Neither is it a defense, as the defendant suggests, that the courier taking the balance sheet to Canada may have changed his mind or been called back prior to giving it to the bankers and thus the offense might not have been completed. Here the report *was* published and the offense *was* completed, as the jury found. One in this state who fashions an arrow, fits it into a bow, and launches it cannot successfully defend against the consequences of such actions on the basis that had the situation developed differently, the arrow might have been deflected from the target before striking it.

The cases principally relied on by the defendant in support of his jurisdictional argument are *People v. Buffum,* 40 Cal. 2d 709, 256 P.2d 317 (1953); *People v. Werblow,* 241 N.Y. 55, 148 N.E. 786 (1925); and *Reass v. United States,* 99 F.2d 752 (4th Cir. 1938). Those cases are all distinguishable from the present case since in none of them had any of the essential elements of the offenses charged been committed within the jurisdiction of those courts.

ISSUE THREE.

CONCLUSION. The defendant has not sustained his burden of proving that either RCW 9.24.050 or RCW 9.01.050 (1) are constitutionally infirm or otherwise invalid.

The defendant challenges the validity of RCW 9.24.050, defining the offense charged, on the following additional grounds: that the statute is vague, lacks objective standards, and does not require proof of an intent to deceive or defraud. The defendant similarly challenges RCW 9.01.050 (1) on the ground that the words "in part" are vague and not capable of being understood by a person of common understanding.

As occurs with some frequency in criminal cases, the validity and constitutionality of the statutes under which the defendant was brought to trial and convicted are here challenged. This, of course, is the defendant's legal right. It

must be recognized, however, that the challenger's burden in this regard is a very heavy one.

It is, after all, the people themselves who elect legislatures to enact the statutes which command what is right and prohibit what is wrong. The legislature has broad authority in this regard:

> The power to determine what acts shall constitute crimes, and what acts shall not, and to prescribe punishment for acts prohibited belongs to the legislative branch of government. This power is said to be inherent in the state legislature and it is also comprehended in the general grant of legislative power contained in the state constitution. The power is exclusive and is not shared by the courts. So long as constitutional prohibitions are not infringed, the will of the legislature in this respect is absolute. But the power to define crimes is of course subject to the limitations contained in state and federal constitutions.

(Footnotes omitted.) 21 Am. Jur. 2d *Criminal Law* § 14, at 95 (1965). *Accord, Shea v. Olson*, 185 Wash. 143, 153, 53 P.2d 615, 111 A.L.R. 998 (1936); 22 C.J.S. *Criminal Law* § 13, at 49 (1961).

Furthermore, as Justice Oliver Wendell Holmes so well expressed,

> it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.

*Missouri, K. & T. Ry. v. May*, 194 U.S. 267, 270, 48 L. Ed. 971, 24 S. Ct. 638 (1904).

An enactment of the legislature is presumed to be constitutional and should not be declared invalid unless it is shown beyond a reasonable doubt to be so. *Washington Kelpers Ass'n v. State*, 81 Wn.2d 410, 416, 502 P.2d 1170 (1972); *Reesman v. State*, 74 Wn.2d 646, 650, 445 P.2d 1004 (1968).

The courts of this state are firmly committed to the rule that one who challenges the validity of a statute has the burden of establishing that invalidity. *Bitts, Inc. v. Seattle*, 86 Wn.2d 395, 399, 544 P.2d 1242 (1976); *State v. Primeau*, 70 Wn.2d 109, 111, 422 P.2d 302 (1966).

These rules are more than mere rules of judicial convenience. They mark the line of demarcation between legislative and judicial functions. *Lenci v. Seattle*, 63 Wn.2d 664, 668, 388 P.2d 926 (1964).

The defendant has not directed any case to our attention which directly holds that the statutes here questioned, or others which are substantially identical, are unconstitutional or otherwise invalid. We have read the authorities cited and have carefully reviewed them and the arguments which have been presented to us. In the opinion of this court, the defendant has not sustained his heavy burden of proving that the challenged statutes are unconstitutional or otherwise invalid in any respect. Under these circumstances, we do not believe that a lengthy dissertation on the various principles of law which have been presented for our consideration in this regard would serve any worthwhile purpose.

We do not find either RCW 9.24.050 or RCW 9.01.050(1) to be vague, nor does the former lack objective standards. Neither have we been persuaded that the legislature did not have the right to determine that an intent to deceive or defraud is not required as an element of the crime established by RCW 9.24.050. We therefore decline to hold either statute unconstitutional or otherwise invalid.

Issue Four.

Conclusion. The trial court did not err in instructing the jury.

For convenience, we consider together the remaining jury instructions, given and proposed, concerning which the defendant has assigned error.

▮ Error is assigned to the trial court's refusal to give the defendant's proposed instruction on circumstantial evidence. The instruction was of the so-called multiple hypothesis type which was considered by the court in *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975). It was there held that it is no longer necessary to give such an instruction and the jury need only be instructed, as it was here, that it must be convinced beyond a reasonable doubt that the

defendant is guilty. *State v. Gosby, supra; State v. Dobbs,* 14 Wn. App. 613, 544 P.2d 134 (1975).

The defendant also assigns error to the trial court's refusal to give his proposed instruction setting out the elements which the State had to prove in order to convict the defendant of the offense charged. The only exception the defendant took to the court's failure to give that instruction was that he felt the defense was entitled to an instruction requiring the jury to be convinced beyond a reasonable doubt as to each necessary element of the offense. The "to convict" instruction given by the trial court did require just that. (See instruction No. 3.)

The defendant also assigns error to the trial court's instruction which advised the jury that in order to convict the defendant, the State need not prove the defendant intended to defraud anyone. As heretofore discussed, intent to defraud is not an element of the offense charged and the trial court properly acted within the ambit of its discretion in so instructing the jury.

The defendant's assignments of error with respect to instructions are not well taken.

ISSUE FIVE.

CONCLUSION. It was within the sound discretion of the trial court to permit a witness to be impeached as to bias or interest by cross-examination showing that the witness stood separately charged with the same crime as the defendant for whom he testified.

One of the other directors of the corporation, who had signed the corporate balance sheet in question, was called and testified as a defense witness. During cross-examination, the deputy prosecutor was permitted over objection to elicit the fact that the witness was separately charged with the same offense. This is assigned as error.

Cross-examination of a witness to show bias, prejudice, or interest is a matter of right, but the scope of such cross-examination is a matter resting within the sound discretion of the trial court. *State v. Robbins,* 35 Wn.2d 389, 396, 213 P.2d 310 (1950); *State v. Knapp,* 14 Wn. App. 101,

107, 540 P.2d 898 (1975). *See* 5 R. Meisenholder, Wash. Prac. § 299, at 264 (1965).

It was within the sound discretion of the trial court to permit a witness to be impeached as to bias or interest by cross-examination showing that the witness stood separately charged with the same crime as the defendant for whom he testified. 98 C.J.S. *Witnesses* § 543, at 484 (1957); 2 C. Torcia, *Wharton's Criminal Evidence* § 463, at 404 (13th ed. 1972). *See also State v. Wills*, 3 Wn. App. 643, 645, 476 P.2d 711 (1970).

Affirmed.

WILLIAMS, C.J., and SWANSON, J., concur.

Petition for rehearing denied January 19, 1977.

Review denied by Supreme Court June 8, 1977.