## Commonwealth v. Rohrer

*Harry Polikoff*, Deputy Attorney General, and *K. L. Shirk*, assistant district attorney, for Commonwealth.

*Frederick Crankshaw*, and *Bard & Brown*, for defendant.

SCHAEFFER, J., August 27, 1937.—Defendant, Wayne L. Rohrer, a resident and milk dealer of Lancaster County, Pa., was indicted for an alleged violation of the Milk Control Board Law of April 30, 1935, P. L. 96, sec. 18 (E.) by selling milk below the minimum prices fixed by the Pennsylvania Milk Control Board, through the allowance of a two percent discount. Defendant admits allowing such a discount but contends that under the law his contract and dealings with the Federal Government for the supply of milk for the United States Veterans Hospital at Coatesville, Pa., are beyond the jurisdiction of this court.

Defendant agreed in writing, with the consent of his attorneys, to waive trial by jury and elected to be tried by a judge without a jury in accordance with the Act of June 11, 1935, P. L. 319, sec. 1. At the trial no testimony was taken but counsel for the Commonwealth and defendant submitted the following stipulation of facts to be read into the record:

"1. That the offer to sell and sale in the instant proceeding was made by this defendant, a milk dealer doing business with the general public in Lancaster, Pa., with the Federal Government, through the Veterans Administration Facility located at Coatesville, Pa., for the supply of milk to the said United States Veterans Hospital.

"2. That invitations to bid on the milk contract to supply milk to the United States Veterans Hospital at Coates-

ville, Pa., came through said Veterans Administration Facility.

"3. That on or about December 17, 1936, a bid was made and submitted by defendant at the Veterans Administration Facility at Coatesville, Pa., by defendant sending his duly-authorized representative to the Veterans Administration Facility at Coatesville, Pa., to personally present defendant's bid; and notice of acceptance thereof was duly received by defendant at his place of business in Lancaster, Pa.

"4. That all the milk under the contract between the Veterans Administration Facility at Coatesville, Pa., and defendant was delivered and consumed on the premises of the Veterans Administration Facility at Coatesville, Pa.

"5. That payment was made to defendant on the said contract through and by the United States Government, through the office of the Treasurer of the United States, who issued his voucher for payment of all milk delivered under said contract.

"6. That the Veterans Administration Facility at Coatesville, Pa., is an agent of the Veterans Administration of Washington, D. C., and the Veterans Administration of Washington, D. C., is an agency of the United States Government.

"7. That an alleged offense in the instant proceeding is the third, if any, committed by defendant under the act of assembly involved herein, namely, the Milk Control Board Law of April 30, 1935, P. L. 96, and the Milk Control Law of April 28, 1937, P. L. 417, insofar as the saving clauses of the latter act save offenses committed under the former act.

"8. That Official General Order No. 28, duly issued by the Milk Control Board of the Commonwealth of Pennsylvania, prescribed certain minimum prices for the milk and milk products specified in the above invitations to bid submitted by the said Veterans Administration Facility. Defendant bid the prescribed prices, less a discount

of two percent, cash ten days, contrary to section 18 of the aforesaid act, and section 19 of the aforesaid order, prohibiting discounts."

Counsel for defendant offered in evidence the Act of July 12, 1935, P. L. 651, and it was stated at the trial that: "It is conceded by counsel for the defense that if any offense occurred in the State of Pennsylvania, it occurred in the County of Lancaster and not in the County of Chester, for the purpose of jurisdiction in this court only."

The Act of July 12, 1935, supra, is relied upon by defendant's counsel, who say in their brief:

"It is perfectly obvious that no law of the Commonwealth of Pennsylvania, Milk Control Board Law or otherwise, is of any virtue, force, or effect on these lands and that this act of assembly is a complete and irrefutable defense to the charge brought against Rohrer in this case." This act provides, inter alia, as follows:

"Section 1. . . . That the consent of the Commonwealth of Pennsylvania is hereby granted to the purchase, by the Government of the United States, of certain tracts of land, containing approximately three hundred sixty-eight acres, for use in the care and treatment of discharged sick and disabled soldiers, or for other uses of the United States; said tracts of land being situate in Caln Township, Chester County, Pennsylvania. . . .

"Section 2. Exclusive jurisdiction over the lands so purchased is hereby ceded to the United States by the Commonwealth of Pennsylvania; and said lands shall be exempt from the payment of all taxes, State and local: Provided, That the Commonwealth of Pennsylvania shall retain a concurrent jurisdiction with the United States over the lands so acquired by the United States for the purpose of serving of all civil processes: And provided further, That such criminal processes as may issue under the authority of the Commonwealth, against any person or persons charged with crimes committed without the area so acquired, may be executed therein, in the same manner as though this cession had not been granted."

Under the Act of Congress passed March 4, 1931, c. 521, sec. 4, 46 Stat. at L. 1550, 38 U.S.C. §438m, the President of the United States is authorized to accept from any State any ground suitable for the care of disabled veterans of all wars. No evidence was submitted of such acceptance, but the present status of the veterans hospital in question warrants the conclusion that the President accepted the land ceded by the Commonwealth of Pennsylvania to the United States Government.

The Supreme Court of Pennsylvania in Manlove v. McDermott, 308 Pa. 384 (1932), affirming 104 Pa. Superior Ct. 560, recognized the right of the State to cede land to the United States Government for Government purposes, reserving the right of service of State civil and criminal processes therein. At page 386 of the opinion it is said:

"Action under similar reservations of the right to serve civil and criminal process in lands so ceded to the federal government has been held not to interfere with the supremacy of the United States over the land ceded; on the contrary, such action is supported in order that the land ceded may not become a refuge for persons fleeing from the police or the sheriff: United States v. Cornell, 2 Mason 60, Fed. Cas. No. 14867; Fort Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 29 L. Edition 264." See also County of Allegheny v. McClung, 53 Pa. 482.

In the interpretation of the Act of July 12, 1935, P. L. 651, the intention of the legislature may be gathered from similar acts of assembly of this State. The Act of July 2, 1923, P. L. 987, ceding land in O'Hara Township, Allegheny County, Pa., to the Government of the United States for the care and treatment of disabled soldiers contained language practically verbatim with the statute under consideration. Criminal process was limited to "crimes committed without the area so acquired." Similar language appears in the Act of March 30, 1917, P. L. 29, sec. 2, relative to the Frankford Arsenal in Philadel-

phia. On the other hand, land ceded by the Commonwealth of Pennsylvania to the United States Government for the Carlisle Indian Industrial School Farm in Cumberland County under the Act of February 15, 1901, P. L. 9, gave concurrent jurisdiction to this State over any crime or misdemeanor committed anywhere within this State. The Act of April 21, 1921, P. L. 257, with reference to National Forest Reserves in this State, provides that the Commonwealth of Pennsylvania shall retain a concurrent jurisdiction with the United States against any person charged with the commission of any crime "without or within said jurisdiction". It is thus evident that the legislature of this State distinguishes between criminal offenses committed within and without the area of land acquired by the United States Government within the boundaries of Pennsylvania.

The Criminal Code of March 4, 1909, 35 Stat. at L. 1088, as amended by the Act of June 20, 1935, 49 Stat. at L. 394, 18 U.S.C. §468, provides as follows:

"Whoever, within the territorial limits of any State, organized Territory, or District, but within or upon any of the places now existing or hereafter reserved or acquired, described in section 451 of this title shall do or omit the doing of any act or thing which is not made penal by any laws of Congress, but which if committed or omitted within the jurisdiction of the State, Territory, or District in which such place is situated, by the laws thereof in force on April 1, 1935, and remaining in force at the time of the doing or omitting the doing of such act or thing, would be penal, shall be deemed guilty of a like offense and be subject to a like punishment." See Act of March 4, 1909, c. 321, sec. 289, 35 Stat. at L. 1145, as amended June 15, 1933, c. 85, 48 Stat. at L. 152, and Act of June 20, 1935, c. 284, 49 Stat. at L. 394. Section 272 of the Act of 1909, supra, provides as follows:

"Third. When committed within or on any lands reserved or acquired for the exclusive use of the United States, and under the exclusive jurisdiction thereof, or

any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dock-yard, or other needful building."

The Act of April 30, 1935, P. L. 96, being a reënactment and amendment of the Act of January 2, 1934, P. L. 174, under which this prosecution was brought, was in force on April 1, 1935, the date referred to in the Criminal Code of 1935, supra.

The apparent object of the above-cited Federal legislation is to provide punishment for offenses committed in places under the jurisdiction of the United States not specifically provided for by Federal laws: Washington, P. & C. Ry Co. v. Magruder et al., 198 Fed. 218, 222; United States v. Andem, 158 Fed. 996; In re O'Connor, 37 Wis. 379; State v. Morris, 76 N. J. L. 222, 68 Atl. 1103; In re Kelly, 71 Fed. 545.

It is evident that exclusive jurisdiction over the land in question was ceded by the Commonwealth of Pennsylvania to the United States Government. The State reserved concurrent jurisdiction only to serve State civil and criminal process in the ceded land and limited the latter to "crimes committed without the area so acquired." If the offense in question was committed wholly within the area of the United States Veterans Hospital at Coatesville, Pa., the Federal court and not this court has exclusive jurisdiction. Accordingly, the question arises as to where the offense was committed.

Defendant's bid or offer to sell and deliver milk to the United States Veterans Hospital at Coatesville, Pa., merged in the contract upon its acceptance and consummation. Under the admitted facts of the instant case the acceptance was received by defendant in Lancaster County, Pa. There is no evidence to show whether it was mailed or delivered personally to defendant in Lancaster County. In Morganstern Electric Co. v. Coraopolis Borough, 326 Pa. 154 (1937), Justice Stern of the Supreme Court of Pennsylvania in his opinion said: "It is elemen-

tary that no obligation is created by the acceptance of an offer unless and until it is transmitted to the offeror." If the acceptance of defendant's bid was delivered personally to defendant in Lancaster County, the contract was completed and became effective when accepted by defendant in Lancaster County. If the acceptance of defendant's bid by the United States Government was mailed, it is not stated where it was mailed. Ordinarily, "depositing in the post office a properly addressed, prepaid letter, raises a natural presumption, founded in common experience, that it reached its destination by due course of mail. In other words, it is prima facie evidence that it was received by the person to whom it was addressed; but that prima facie proof may be rebutted by evidence showing it was not received": Jensen v. McCorkell, 154 Pa. 323. In Commonwealth v. Ballante, 2 D. & C. 538, where defendant was charged with drawing a fraudulent check against insufficient funds in bank, Baldrige, P. J., said:

"The delivery to the post-office is a constructive and technical delivery. It is not that complete transfer and final step which this statute contemplates. This is especially true since the regulations of the United States Post-Office have been altered so that a sender of mail may apply for it after he has deposited it in a letter-box, when he can identify it, and the postmaster must return it to him: 13 Corpus Juris, 302."

In Commonwealth v. Rogowski, 6 D. & C. 628, it was decided that where a check is drawn in Philadelphia and payable at a bank there, but is sent to another county in payment of a note, a prosecution charging that the drawer fraudulently issued the check upon a bank without having sufficient funds or credit for its payment may be instituted in the latter county.

The court concludes that the contract involved in this case was consummated in Lancaster County. If this conclusion is untenable, then at least certain elements of the alleged illegal contract or offense occurred in Lan-

caster County, Pa., and other elements thereof considered as a unit were committed on the land of the United States Veterans Hospital at Coatesville, Pa. Under that view of the case the decision of the Supreme Court of the United States in United States v. Press Publishing Co., 219 U. S. 1, seems applicable. In that case defendant company was charged in a Federal court with criminal libel in circulating copies of its newspaper, The World, containing the libel within the United States reservation known as West Point in New York State and at the post office in New York City. Both West Point and the post office building were averred to be places within the exclusive jurisdiction of the United States. Mr. Chief Justice White construed the Act of Congress of July 7, 1898, c. 576, 30 Stat. at L. 717, which made the criminal laws of the several States laws of the United States applicable to the United States reservations within the States. In deciding that the State and not the Federal court had jurisdiction, he said in his opinion at page 15:

". . . resort could not be had to the courts of the United States to punish the act of publishing a newspaper libel by circulating a copy of the newspaper on the reservation upon the theory that such publication was an independent offense, separate and distinct from the primary printing and publishing of the libelous article within the State of New York, without disregarding the laws of that State". At page 17 he said:

". . . we do not now intimate that the rule which in this case has controlled our decision would be applicable to a case where an indictment was found in a court of the United States for a crime which was wholly committed on a reservation, disconnected with acts committed within the jurisdiction of the State, and where the prosecution for such crime in the courts of the United States instead of being in conflict with the applicable state law was in all respects in harmony therewith."

It is no defense that defendant was dealing with the United States Government admittedly in violation of the

Milk Control Board Law. In Paterson Milk & Cream Co., Inc., v. Milk Control Board, etc., et al., 118 N. J. L. 383, 192 Atl. 838, it is said:

"The second point made is that sales made to the United States government by the prosecutor, at prices below those fixed by the milk control board, were not subject to the Milk Control act of this state. Price fixing by a state milk control board was held constitutional in *Nebbia v. New York*, 291 *U. S.* 502. It was settled in *Trinityfarm Construction Co. v. Grosjean*, 291 *Id.* 466, that where the United States deals with a corporation the corporation with which it deals is subject to state regulations. Hence it would seem that the prosecutor was obliged to obey the reasonable regulations of the milk control board of this state, and the fact that he dealt with the United States government is no justification for his disregard of the reasonable regulations of this state."

Defendant further contends that the contract in this case relates to interstate commerce and that the Milk Control Board Law of Pennsylvania does not apply to the subject matter of this controversy. The Milk Control Board Law of April 30, 1935, P. L. 96, sec. 23, provides:

"No provision of this act shall apply, or be construed to apply, to foreign or interstate commerce; except in so far as the same may be effective in accordance with the Constitution of the United States and the laws of the United States enacted pursuant thereto."

Defendant relies upon Panhandle Oil Co. v. Mississippi ex rel., etc., 277 U. S. 218, where gasoline was sold to the United States Government for use in operation of the Coast Guard fleet and the Veterans Hospital at Gulfport, which it was authorized to maintain and operate by virtue of article I, sec. 8, of the Constitution. The State imposed a tax on gasoline, except gasoline sold in interstate commerce. The decision rests largely upon the Federal instrumentality theory expressed in the opinion as follows:

"While Mississippi may impose charges upon petitioner for the privilege of carrying on trade that is subject to the power of the State, it may not lay any tax upon transactions by which the United States secures the things desired for its governmental purposes." Mr. Justice Holmes in his dissenting opinion said:

"An imperfect analogy with taxation that affects interstate commerce is relied upon. Even the law on that subject has been liberalized since the decision of most of the cases cited. *Sonneborn Brothers v. Cureton*, 262 U. S. 506."

Three other justices joined in the dissenting opinion. See also Bayside Fish Flour Co. v. Gentry et al., 297 U. S. 422 (1936).

In the case at bar it is not a question of taxation, but the exercise of the State police power. Furthermore, under the express provision of section 23 of the Milk Control Board Law of Pennsylvania, supra, it is applicable even to interstate commerce so far as the same may be in accordance with the Constitution of the United States and the laws of the United States enacted pursuant thereto. The offense with which defendant is charged is cognizable under certain conditions in a State court and also in a Federal court under the statute hereinbefore cited and discussed. This court is inclined to the view that the offense in question does not relate to interstate commerce, and even if it should be so construed, it is covered by the saving clause of section 23 of the Milk Control Board Law of April 30, 1935, P. L. 96. This is a criminal proceeding and not a civil suit. As stated in Patterson v. Kentucky, 97 U. S. 501, 504, which sustained a Kentucky statute regulating the sale and use of a United States patent:

"State legislation, strictly and legitimately for police purposes, does not, in the sense of the Constitution, necessarily intrench upon any authority which has been confided, expressly or by implication, to the national government."

For the foregoing reasons the court overrules defendant's motion for a directed verdict of not guilty.

And now, August 27, 1937, the court, upon careful consideration of the evidence and the law in this case, finds that defendant, Wayne L. Rohrer, is guilty of the offense with which he is charged in the indictment in this case.

*Opinion sur motion for new trial*

*Frank E. Coho,* Deputy Attorney General, and *K. L. Shirk,* assistant district attorney, for Commonwealth.

*W. Hensel Brown* for defendant.

SCHAEFFER, J., October 27, 1939.—This is a rule for a new trial. The case was tried by a judge without a jury in accordance with the Act of June 11, 1935, P. L. 319, sec. 1. No testimony was taken. The facts were agreed upon and submitted to the court by stipulation of counsel. Defendant, Wayne L. Rohrer, was adjudged guilty of violating the Milk Control Board Law of April 30 1935, P. L. 96, sec. 18(*e*). It is admitted in the stipulation that "the offer to sell and sale in the instant proceeding was made by this defendant", and that he allowed a discount of two percent. Defendant contends that the court has no jurisdiction because the offense, if any, was committed on United States property, being land ceded by the Commonwealth of Pennsylvania to the United States Government for the United States Veterans Hospital at Coatesville, Pa.

In an opinion filed by this court in this same case, on defendant's motion for a directed verdict of not guilty, the questions now raised in the 10 reasons for a new trial were considered and passed upon at length.

In Milk Control Board v. Gosselin's Dairy, Inc., (Mass. 1938) 16 N. E. (2d) 641, 644, decided by the Supreme Judicial Court of Massachusetts since the filing of said prior opinion, it is stated:

"In the present development of the law the question admits of doubt, but until higher judicial authority decides otherwise we incline to the view that a dealer furnishing

milk in this Commonwealth to the veterans' hospital remains bound by the Massachusetts milk control law. The only reported decision which we have seen directly in point takes a similar view. Paterson Milk & Cream Co., Inc., v. Milk Control Board, 118 N. J. L. 383, 192 A. 838."

Upon careful reconsideration of this case the court concludes that it did not err in its prior determination of the questions involved in this proceeding.

And now, October 27, 1939, the court discharges the rule for a new trial.