[No. 55690-3.   En Banc.   May 4, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. JEFFREY EUGENE LANE, ET AL, *Petitioners.*

*Raymond H. Thoenig, Lloyde L. Alton, Jr.,* and *L. Steve Edmondson* of *Department of Assigned Counsel,* for petitioners Lane and Anderson.

*Davies Pearson,* by *Clifford G. Morey,* for petitioner Woods.

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for respondent.

ANDERSEN, J.—

FACTS OF CASE

At issue in this case is whether the State of Washington has jurisdiction to try the three petitioners for aggravated first degree murder. The petitioners maintain that the State lacks jurisdiction because the victim was killed at Fort Lewis, Washington, on land held under exclusive federal jurisdiction.

The parcel of Pierce County land ceded to the federal government for a military reservation, and where the killing actually occurred, will be referred to herein simply as Fort Lewis.

Petitioners Jeffrey Lane, Jonathan Woods and Wayne Anderson have been charged in the Superior Court of the State of Washington with the crime of aggravated murder in the first degree. They were so charged by the Pierce County Prosecuting Attorney as a result of the death of 89–year–old Eva Jane Wolfe.[1]

Petitioners are awaiting trial and as yet there has been no adjudication of the facts of this case. The Pierce County Prosecuting Attorney has, however, filed an affidavit for determination of probable cause which sets forth the evidence which the State asserts it has in support of the charges against the petitioners. The facts of this case, as alleged by the State through this affidavit, are as follows.

In the late evening of April 30, 1988, the three petitioners drove to the victim's home in Tacoma, Washington. Each of them wore ski masks and gloves. Lane was armed with a .380 caliber semiautomatic handgun. Anderson cut what he thought was the cable to the victim's telephone and then kicked in her back door. Petitioners entered the house, took the victim's purse and checkbook and put her in the trunk of her car.

Next, according to the affidavit filed by the State, the three petitioners drove away in the victim's car, with her in the trunk, and headed for a remote, wooded area. Upon arriving in such an area, Lane gave Woods the .380 handgun that Lane was carrying and Woods removed the victim from the trunk and led her away from the car. Woods shot the 89–year–old victim six times in the leg and returned to the car, laughing and saying "I killed the bitch." Lane and Woods celebrated by gleefully giving each other "high

---

[1]The petitioners were also charged, in relation to their alleged conduct against the victim, with burglary in the first degree, robbery in the first degree, and kidnapping in the first degree.

fives" (slapping hands), before they discovered the victim was still alive. She begged them not to leave her there and pleaded for mercy. The petitioners responded by loading two more rounds into the clip of the gun and then Woods went back and shot her to death—"shot her face off", as one of the petitioners expressed it. Woods, however, claims it was Lane who actually shot the victim.

The State alleges that this was not the victim's first encounter with petitioners Lane and Woods. On November 4, 1987, according to the State's affidavit, these two petitioners forced their way into the victim's home. They told her that they were evading the police and stayed there some 2½ hours. The State later brought charges against Lane and Woods and subpoenaed the victim for the trial. While in jail prior to abducting her, Lane and Woods discussed killing her in revenge for her assisting the State in that prosecution.

The State, through its affidavit, also asserts that the petitioners went to the victim's house "to fix her", and that they took her to the wooded area to "dispose of her".

Woods later led police to the victim's body. It was located in a wooded area of Fort Lewis. Empty .380 caliber shell casings were found near the body. The State and petitioners stipulated that the fatal wounds were inflicted and the victim's death occurred at Fort Lewis.

All three petitioners were charged in the Superior Court of the State of Washington with having in Pierce County committed the crimes of aggravated first degree murder and first degree burglary, robbery and kidnapping. Petitioners moved to dismiss the aggravated first degree murder charge for want of jurisdiction. The Superior Court denied that motion, whereupon petitioners sought and were granted discretionary review by this court.[2]

One issue is presented for our decision.

---

[2] RAP 2.3, 4.2.

## ISSUE

Does the State of Washington have jurisdiction to try the petitioners for aggravated first degree murder where the victim was killed within the State of Washington but on land which had been ceded to the federal government?

## DECISION

CONCLUSION. The State of Washington may exercise jurisdiction over a criminal offense if an essential element of the offense occurred within the state but outside the land ceded to the federal government (where the offense culminated). Premeditation is an essential element of aggravated first degree murder and the State has made a sufficient showing of facts to establish that this element of the offense occurred within this state outside the federal lands in question.

Jurisdiction is the power of a court to hear and determine a case.[3] A court's jurisdiction over a case may be either exclusive or concurrent with that of other courts.[4] Petitioners maintain that the federal courts have exclusive jurisdiction over the aggravated first degree murder charge in this case because the victim was killed on land ceded to the federal government.

■ We first turn to the Constitution of the United States; it expressly provides that Congress has the power

> [t]o exercise *exclusive legislation* in all cases whatsoever, . . . over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, . . .

(Italics ours.) U.S. Const. art. 1, § 8 (part). As a consequence, it is the general rule that where a crime is committed within the boundaries of land purchased by the United States with the consent of the state for the erection of forts,

---

[3]*State v. Hampson,* 9 Wn.2d 278, 281, 114 P.2d 992 (1941); 20 Am. Jur. 2d *Courts* § 88, at 449 (1965).

[4]*Rice v. Janovich,* 109 Wn.2d 48, 742 P.2d 1230 (1987); 20 Am. Jur. 2d § 106, at 465.

federal courts have jurisdiction over the prosecution of that crime to the exclusion of state courts.[5] However, where property is ceded to the federal government, as opposed to being purchased by it, the terms of the cession determine the extent of federal jurisdiction.[6] The decisions of this court are in accord with these principles.[7]

The land embracing Fort Lewis was conveyed by Pierce County to the federal government in 1919. According to the deed evidencing this conveyance, the property was donated "free of cost" to the United States. Thus, the property was not "purchased" by the federal government and the terms of cession determine the extent of the federal jurisdiction. The state legislation which authorized Pierce County to convey the property in question provides:

> Pursuant to the constitution and laws of the United States, and especially to paragraph seventeen of section eight of article one of such constitution, the consent of the legislature of the State of Washington is hereby given to the United States to acquire, by donation from Pierce county, title to all lands herein intended to be referred to, . . . *and the consent of the State of Washington is hereby given to the exercise by the congress of the United States of exclusive legislation in all cases whatsoever over such tracts or parcels of land so conveyed to it . . . provided,* That all civil process issued from the courts of this state and such criminal process as may issue under the authority of this state, against any person charged with crime in cases arising outside of said reservation, may be served and executed thereon in the same mode and manner and by the same officers as if the consent herein given had not been made.

---

[5]4 R. Anderson, *Wharton on Criminal Law and Procedure* § 1504, at 82 (1957); 21 Am. Jur. 2d *Criminal Law* § 350, at 602 (1981); 22 C.J.S. *Criminal Law* § 139, at 371 (1961).

[6]*Bowen v. Johnston,* 306 U.S. 19, 83 L. Ed. 455, 59 S. Ct. 442 (1939); 22 C.J.S. § 139, at 371.

[7]*See Ryan v. State,* 188 Wash. 115, 126, 61 P.2d 1276 (1936), *aff'd,* 302 U.S. 186 (1937); *Concessions Co. v. Morris,* 109 Wash. 46, 186 P. 655 (1919).

(Italics ours.) Laws of 1917, ch. 3, § 20, p. 14.[8] Since the mere reservation of state jurisdiction for service of process does not defeat a grant of exclusive jurisdiction,[9] it is apparent that the State has ceded such jurisdiction over the Fort Lewis property to the United States.[10]

The State concedes that the fatal wounds were inflicted, and the victim's death occurred, in this area of exclusive federal jurisdiction. It maintains, however, that Washington still has jurisdiction because an element of the crime— premeditation—occurred within the State of Washington and Pierce County, outside Fort Lewis. We agree.

■ It is fundamental that jurisdiction over a crime rests exclusively in the courts of the state in which the crime is committed.[11] However, where elements of a crime are committed in different jurisdictions, any state where an essential part of the crime has been committed may take jurisdiction.[12] At least, this is the case where a state provides for such jurisdiction by statute.[13] This same rule also applies where elements of a crime are committed in both a federal enclave and the territory of a state.[14]

---

[8]*See also* Const. art. 25, § 1 (consent to exclusive legislation over land then held by federal government); RCW 37.04.010 (consent to acquisition of land); RCW 37.04.020 (cession of jurisdiction over land acquired by United States); RCW 37.16.180 (cession of jurisdiction over lands donated to United States).

[9]*Concessions,* at 64; 21 Am. Jur. 2d § 350, at 603.

[10]*Concessions,* at 51, 67.

[11]*Huntington v. Attrill,* 146 U.S. 657, 36 L. Ed. 1123, 13 S. Ct. 224 (1892); 21 Am. Jur. 2d § 343, at 596.

[12]*State v. Moore,* 189 Wash. 680, 690, 66 P.2d 836 (1937); 21 Am. Jur. 2d § 345, at 597–98.

[13]*Moore,* at 690; 2 W. LaFave & J. Israel, *Criminal Procedure* § 16.2(c), at 349–50 (1984).

[14]*Leonard v. United States,* 500 F.2d 673 (5th Cir. 1974); *State v. Kirksey,* 647 S.W.2d 799, 804 (Mo. 1983); *Commonwealth v. Rohrer,* 37 Pa. D. & C. 410 (1937).

Washington's criminal jurisdiction statute provides in pertinent part:

The following persons are liable to punishment:

(1) *A person who commits in the state any crime,* in whole or *in part.*

(Italics ours.) RCW 9A.04.030(1). This statute modifies the common law and enlarges the scope of our state's criminal jurisdiction.[15] An offense is committed "in part" in Washington, within the contemplation of the criminal jurisdiction statute, when an "essential element" of the offense has been committed here.[16]

In *State v. Swanson,* 16 Wn. App. 179, 189, 554 P.2d 364 (1976), *review denied,* 88 Wn.2d 1014, *cert. denied,* 434 U.S. 967 (1977), our Court of Appeals explained that "[t]he purpose of this statute is to eliminate twilight zones affording safe haven to persons who commit offenses partly within this state and partly without it." The Court of Appeals also there noted that

[i]t is necessary, however, to discriminate with great care between acts essential to the crime and acts merely incidental thereto.

*Swanson,* at 190 (quoting 21 Am. Jur. 2d *Criminal Law* § 385, at 404 (1965)). Thus, jurisdiction to try the petitioners for aggravated first degree murder resides in the courts of this state if an essential element of this crime was committed within the state of Washington outside Fort Lewis.

The first degree murder statute (RCW 9A.32.030) sets forth three types of first degree murder: (1) premeditated murder (RCW 9A.32.030(1)(a)); (2) murder by extreme indifference to human life (RCW 9A.32.030(1)(b)); and (3) felony murder (RCW 9A.32.030(1)(c)).[17] The crime of

---

[15] *State v. Booher,* 148 Wash. 149, 153, 268 P. 167 (1928), *appeal dismissed,* 279 U.S. 822 (1929); 2 W. LaFave & J. Israel § 16.2(c), at 349–50.

[16] *Moore,* at 690–92; *State v. Swanson,* 16 Wn. App. 179, 190, 554 P.2d 364 (1976), *review denied,* 88 Wn.2d 1014, *cert. denied,* 434 U.S. 967 (1977).

[17] "Murder in the first degree. (1) A person is guilty of murder in the first degree when:

*aggravated* first degree murder, in turn, is defined by statute as *premeditated* murder in the first degree accompanied by one or more statutory aggravating circumstances.[18]

Premeditation is "the deliberate formation of and reflection upon the intent to take a human life";[19] it involves "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short."[20] The homicide statutes further declare that

> the premeditation required in order to support a conviction of the crime of murder in the first degree must involve more than a moment in point of time.

RCW 9A.32.020(1) (part).

▮ Premeditation is an element separate and distinct from the specific intent to kill required for first degree murder;[21] it also distinguishes first degree murder from

---

"(a) With a premeditated intent to cause the death of another person, he causes the death of such person or of a third person; or

"(b) Under circumstances manifesting an extreme indifference to human life, he engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person; or

"(c) He commits or attempts to commit the crime of either (1) robbery, in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, (4) arson in the first degree, or (5) kidnapping, in the first or second degree, and; in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants; . . ." RCW 9A.32.030 (part). *See also State v. Irizarry,* 111 Wn.2d 591, 593, 763 P.2d 432 (1988).

[18]"Aggravated first degree murder defined. A person is guilty of aggravated first degree murder if he or she commits first degree murder as defined by *RCW 9A.32.030(1)(a),* as now or hereafter amended, and one or more of the following aggravating circumstances exist . . ." (Italics ours.) RCW 10.95.020 (part). *See also Irizarry,* at 593–94.

[19]*State v. Robtoy,* 98 Wn.2d 30, 43, 653 P.2d 284 (1982). *See also State v. Ollens,* 107 Wn.2d 848, 850, 733 P.2d 984 (1987); *State v. Bingham,* 105 Wn.2d 820, 823, 719 P.2d 109 (1986).

[20]*State v. Brooks,* 97 Wn.2d 873, 876, 651 P.2d 217 (1982). *See also Ollens,* at 850.

[21]*Ollens,* at 850; *Brooks,* at 876.

second degree murder.[22] The failure of the State to sufficiently establish premeditation has been held to require reversal of a conviction for aggravated first degree murder.[23] Clearly, therefore, premeditation constitutes an essential element of the crime of aggravated first degree murder.[24]

It follows from the foregoing, that if the State makes a sufficient showing to establish that premeditation occurred in this state outside Fort Lewis before the infliction of the fatal wounds at Fort Lewis, then the State of Washington has jurisdiction to try petitioners for the crime of aggravated first degree murder.

Our conclusion that premeditation is an essential element sufficient to establish jurisdiction in this state is directly supported by a recent Florida decision. In *Lane v. State*, 388 So. 2d 1022 (Fla. 1980), the evidence showed that the appellant in that case first robbed and abducted the victim in Florida, then killed him in Alabama. Florida's highest court held that under these facts, the State of Florida could try the defendant for first degree murder.[25] In so holding, the court ruled as follows:

> One of the essential elements of this offense is the premeditated design of the appellant to effect the death of the victim or, in the alternative, the perpetration of or an attempt to perpetrate a robbery upon the victim. It is our view that if either of these alternative essential elements of the offense occurred within the State of Florida, then Florida has jurisdiction to try the appellant.

*Lane*, at 1028. It is significant that Florida's criminal jurisdiction statute is very similar to ours.[26]

---

[22]*Bingham*, at 823; *Brooks*, at 876.

[23]*See Bingham*, at 822–23.

[24]RCW 9A.32.030(1)(a).

[25]*Lane v. State*, 388 So. 2d 1022, 1029 (Fla. 1980).

[26]*See Lane*, at 1027. The Florida jurisdiction statute provides: "(1) A person is subject to prosecution in this state for an offense that he commits, . . . if:

474

Another recent decision, this one from Colorado, reached a similar conclusion. In *People v. Cullen,* 695 P.2d 750 (Colo. Ct. App. 1984), the defendant abducted the victims in Colorado, then killed them in New Mexico. The Colorado court, confronting the question of whether the trial court erred by not instructing the jury on the issue of whether the state had jurisdiction, concluded that

> no plain error results from a failure to submit the issue to the jury if the uncontested facts overwhelmingly support jurisdiction. Here, deliberation, an essential element of the crime of first degree murder, occurred within Colorado. Thus, the trial court did not err in failing, *sua sponte,* to refer the question of sovereign jurisdiction to the jury.

(Citations omitted.) *Cullen,* at 751–52.

It is, of course, the law that "before the courts of this state have jurisdiction of an offense, more must be done within our state than just preparing for the commission of a crime elsewhere."[27] Much more than mere preparation, however, is here alleged to have occurred within the State of Washington outside Fort Lewis. The State's position is that petitioners first abducted the victim from her home in Tacoma and that her abduction was integrally related to her killing.

Cases in other jurisdictions have considered an abduction from one state that is integrally related to a homicide in a neighboring state to constitute a critical factor in establishing jurisdiction in the state where the abduction occurred. Particularly relevant in this regard is an Indiana decision, *Conrad v. State,* 262 Ind. 446, 317 N.E.2d 789 (1974). In *Conrad,* the appellant was tried and convicted of manslaughter by an Indiana trial court. The victim had been assaulted and abducted in Indiana, but evidence indicated that the fatal blows were struck in Ohio. The Indiana

"(a) The offense is committed wholly or partly within the state". Fla. Stat. Ann. § 910.005 (West 1985) (part).

[27]*Swanson,* at 190. *See also People v. Werblow,* 241 N.Y. 55, 148 N.E. 786 (1925).

Supreme Court held that Indiana had jurisdiction, reasoning as follows:

> There was substantial evidence presented from which the jury could find that *the assault and abduction of the victim were integrally related to the victim's murder. Thus viewed, the assault and abduction provide an adequate jurisdictional base for appellant's conviction of murder in Wayne County, Indiana.*

(Italics ours.) *Conrad,* 262 Ind. at 451.

Similarly, in *Smith v. State,* 101 Nev. 167, 697 P.2d 113 (1985), the Supreme Court of Nevada concluded that Nevada had jurisdiction over an attempted murder which culminated in California. The court's decision turned on the facts that

> appellant formulated the intent to commit a sexual assault and murder while in Nevada, at the time he first kidnapped his victim and forced her into his van. Further, *his actions in Nevada were themselves criminal in nature and were a necessary and integral part of a larger crime plan to assault and murder the victim.*

(Italics ours.) *Smith,* 101 Nev. at 169.[28]

Thus, although it can be argued that mere premeditation without more may not be sufficient to establish jurisdiction in all cases,[29] we hold that it is clearly sufficient where, as in the case before us, the State has made a sufficient showing that the victim was first abducted from within the State of Washington, but outside Fort Lewis, and that this abduction was integrally related to her subsequent killing at Fort Lewis.

Petitioners make the additional argument that the supremacy clause of the United States Constitution prohibits state jurisdiction in this case.

---

[28]*See also Lane,* at 1023; *People v. Cullen,* 695 P.2d 750, 751 (Colo. Ct. App. 1984) (both indicating that the abduction within the state was integrally related to the subsequent murder in another state).

[29]*See People v. Werblow, supra.*

██ It is true that under the supremacy clause, federal law preempts conflicting state legislation.[30] Congress has also enacted statutes governing the jurisdiction and venue of the federal district courts. *See* 18 U.S.C. §§ 3231–3244. One of these statutes provides:

> In all cases of murder or manslaughter, the offense shall be deemed to have been committed at the place where the injury was inflicted, or the poison administered or other means employed which caused the death, without regard to the place where the death occurs.

18 U.S.C. § 3236. As petitioners' argument goes, this statute preempts Washington's criminal jurisdiction statute. Such argument is not well taken, however, since the federal statutes governing jurisdiction and venue are expressly prefaced by the clear statement that "*[n]othing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.*" (Italics ours.) 18 U.S.C. § 3231. Consequently, we hold that the federal jurisdiction and venue statutes do not preempt the exercise of state jurisdiction in this case.

In sum, we conclude, based on the showing made by the State at this point in the case, that the State of Washington does have jurisdiction to proceed with petitioners' aggravated first degree murder trial. Nonetheless, at trial the State will have the burden of proving beyond a reasonable doubt that jurisdiction does in fact rest with the Washington courts.[31]

The trial court's denial of the motions to dismiss the aggravated first degree murder charge against the petitioners for lack of jurisdiction is affirmed; the case is remanded to the Superior Court for further proceedings.

CALLOW, C.J., BRACHTENBACH, DOLLIVER, DORE, DURHAM, and SMITH, JJ., and NOE, J. Pro Tem., concur.

---

[30]*Department of Labor & Indus. v. Common Carriers, Inc.*, 111 Wn.2d 586, 588, 762 P.2d 348 (1988); 1 R. Rotunda, J. Nowak & J. Young, *Constitutional Law* § 12.1, at 623 (1986).

[31]*State v. Svenson*, 104 Wn.2d 533, 542, 707 P.2d 120 (1985); *Lane*, at 1029.

UTTER, J. (concurring)—Although I concur with the majority's result and analysis, I write separately to explain more fully why the "attempt" requirement, first discussed in *People v. Werblow,* 241 N.Y. 55, 148 N.E. 786 (1925), should not apply in this state. Furthermore, I am concerned that the majority's opinion might be read too broadly to cover all cases in which assault and kidnapping in Washington result in murder in another jurisdiction.

Regarding the first problem, the difficulty lies in determining when a crime is committed "in part" within the state. Cardozo's *Werblow* opinion limited the definition by requiring an act that would amount to an attempt to commit the crime charged. *Werblow,* at 61. The discussion of "attempt," however, leaves room for adjustment:

Acts in furtherance of a criminal project do not reach the stage of an attempt unless they carry the project forward within dangerous proximity to the criminal end to be attained. Where the line is to be drawn will differ with different crimes. Wherever it is drawn, it marks the division between promise and partial or complete fulfillment. . . .

(Citations omitted.) *Werblow,* at 61–62. In *Werblow,* the defendants were charged with grand larceny in obtaining money by false pretenses. They sent cablegrams and messages within the state of New York to inform the participants about their roles in the planned crime. However, both the false pretenses and the receipt of money (23,350 pounds sterling) occurred in England. Apparently the only other act that occurred in New York was the purchase of a draft for 100 pounds from a New York bank. The defendant later deposited the draft in the bank's London branch to establish his credit. The court found this act to be mere preparation and the cablegrams to be mere incitement—neither was sufficient to confer jurisdiction.

Two other states have also interpreted their statutes, in part similar to ours, to require an attempt, which they discussed as an "act beyond mere preparation." *See People v. Buffum,* 40 Cal. 2d 709, 256 P.2d 317 (1953); *People v.*

*Utter,* 24 Cal. App. 3d 535, 101 Cal. Rptr. 214 (1972); *People v. Holt,* 91 Ill. 2d 480, 440 N.E.2d 102 (1982) (dealing with felony murder).[32] However, the *Utter* court noted that there is no constitutional objection to a broader interpretation and that the *Buffum* decision establishing the requirement in California had been strongly criticized. *Utter,* 101 Cal. Rptr. at 224. The *Holt* court also noted that the federal constitution may permit greater geographical jurisdiction over crimes. *Holt,* 440 N.E.2d at 103.

The *Holt* court also emphasized a statutory limitation of "in whole or in part," which reads as follows:

> (b) An offense is committed partly within this State, *if* either *the conduct which is an element of the offense,* or the result which is such an element, *occurs within the State.* In homicide, the 'result' is either the physical contact which causes death, or the death itself; and if the body of a homicide victim is found within the State, the death is presumed to have occurred within the State."

*Holt,* at 484 (quoting Ill. Rev. Stat. ch. 38, § 1–5 (1979)). Based on this limitation, the court concluded that "[n]ot every element of an offense supports jurisdiction", *Holt,* at 487: *the* conduct itself, not just any conduct, must be an element. The court emphasized the history of 1–5, noting its origins in the model penal code which codified the attempt analysis of *Werblow* and *Buffum. Holt,* 440 N.E.2d at 106.

A Colorado court, construing an almost identical statute, did not consider itself bound. *See People v. Cullen,* 695 P.2d 750 (Colo. Ct. App. 1984). Instead, it focused on the purpose of the statute—to modify the common law and expand the scope of state territorial jurisdiction. *Cullen,* at

---

[32]The Missouri Court of Appeals has ruled that premeditation is not enough to confer jurisdiction where a defendant is charged with capital murder. *State v. Harvey,* 730 S.W.2d 271 (Mo. Ct. App. 1987). The court's arguments are unpersuasive, however, because Missouri does not have a statute abrogating the common law jurisdictional rules. Strict territorial analysis is subject to considerable scholarly criticism. *See, e.g.,* Rotenberg, *Extraterritorial Legislative Jurisdiction and the State Criminal Law,* 38 Tex. L. Rev. 763 (1960).

751. *See also State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (1982) (construing a similar statute and finding jurisdiction where buying canvas bags to hold the bodies and renting the boat in Arizona showed evidence of premeditation).

The California Supreme Court found the following statutory language limiting:

"Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of such intent, which culminates in the commission of a crime, either within or without this state such person is punishable for such crime in this state in the same manner as if the same had been committed entirely within this state."

*Buffum,* at 715 (quoting Cal. Penal Code § 778a). The court emphasized the words *in execution or part execution of* and *culminates,* finding the latter analogous to the attempt requirement of a "'direct' ineffectual act towards consummation of the crime." *Buffum,* at 716. In lieu of analyzing the *in whole or in part* language of another statutory section, the court merely stated that *Werblow* and previous California case law make it "apparent" that an attempt is required. *Buffum,* 256 P.2d at 320; *see also People v. MacDonald,* 24 Cal. App. 2d 702, 76 P.2d 121, 125 (1938) (relying on *Werblow* and requiring an "act" that is an "essential ingredient of the crime").

In construing a similar statute, however, the Nevada Supreme Court looked at the defendant's conduct as a whole, finding kidnapping to be "partial execution" of an overall plot to assault and murder the victim. *Smith v. State,* 101 Nev. 167, 697 P.2d 113, 114 (1985). Moreover, Nevada had previously adopted the "attempt" analysis in *Vincze v. Sheriff, Cy. of Clark,* 86 Nev. 474, 470 P.2d 427 (1970). In *Smith v. State, supra,* the court modified the attempt rule to make it inapplicable "when a defendant commits criminal acts in Nevada which are a substantial and integral part of an overall continuing crime plan, and which are clearly in 'partial execution' of the plan . . ." 101 Nev. at 169.

Washington statutes, though, contain no counterpart for the definition of "partly" in the Illinois statute or the limitation in the California statute. The language "in whole or in part" dates from the criminal code enacted in 1909. Laws of 1909, ch. 249, § 2, p. 890. Nonetheless, our statute enlarges Washington's criminal jurisdiction without completely departing from the territorial basis required by common law. *See* 2 W. LaFave & J. Israel, *Criminal Procedure* § 16.2(c), at 349 (1984). At common law, a state could criminalize an act if the conduct or results occurred within the state. 2 W. LaFave & J. Israel, at 347. A concomitant notion, that a crime had only one situs, limited the territoriality principle. 2 W. LaFave & J. Israel, at 347. As Professor LaFave notes, the situs principle has been expanded, but conduct within the state is still required. The cases are not to the contrary. The dispute centers upon how much activity is required and upon whether the conduct itself must be an element of the crime.

Although the conduct in this case is not in itself an element, the alleged conduct provides evidence of premeditation. Where premeditation is an element, as it was not in *Werblow*, conduct evidencing premeditation is sufficient to confer jurisdiction. *See also State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982). I find this interpretation consonant with the trend toward expanded jurisdiction in criminal cases but still within the basic concept of territoriality. There is no reason to cling to the strict territorial interpretation of an earlier era.

The remaining concern, then, is whether the assault and kidnapping alone provide sufficient indication of premeditation. The concern is with a case where a defendant assaults and kidnaps a victim in one state but does not form the intent to kill or premeditate concerning the killing until within another jurisdiction. That concern would be particularly great where the murder occurred not minutes or hours after crossing the state line but perhaps days or weeks later. The term "integrally related" may not provide

enough definition in such a case, but we need not consider that question today.

In addition to the kidnapping and assault in the present case, the State alleges evidence of defendants' discussions about killing the victim in revenge for her testifying against them in an earlier trial. They went to her home "to fix her"; they took her to a remote area "to dispose of her"; and they brought a gun with them to her home. These allegations, if proved, provide additional evidence of premeditation in Washington. *See State v. Ollens,* 107 Wn.2d 848, 853, 733 P.2d 984 (1987) (motive and procurement of a weapon are factors to consider in determining premeditation). These indicia give direction and purpose to the acts of assault and kidnapping. Therefore, I concur.

Reconsideration denied June 14, 1989.