901 P.2d 1200

STATE of Arizona, Respondent,

v.

Juan F. ROBLES, Petitioner.

No. 1 CA–CR 94–0615–PR.

Court of Appeals of Arizona,
Division 1, Department E.

March 21, 1995.

Review Denied Sept. 12, 1995.

Richard M. Romley, Maricopa County Atty. by Diane E.W. Gunnels, Deputy Atty., Phoenix, for respondent.

C. Kenneth Ray II, Phoenix, for petitioner.

## OPINION

KLEINSCHMIDT, Presiding Judge.

This is a petition for review from an order of the trial court denying post-conviction relief from the Defendant's conviction for conspiracy to commit murder. The main issue is whether federal jurisdiction preempts state jurisdiction of the charge. We conclude that both the state and the federal government have jurisdiction of the offense, and that the federal jurisdiction is concurrent, not exclusive. Accordingly, we deny relief.

In April 1991, the Defendant attended a party at the home of Celestino Ramirez in Guadalupe, Arizona. At approximately 10:40 p.m., the Defendant left the party with Roger Gonzales and the victim, Raul Ybarra. They were seen leaving in Gonzales' pickup truck.

Gonzales was driving, the Defendant was sitting in the passenger seat, and Ybarra was sitting behind the front seat in the extended cab portion of the passenger compartment.

Sometime after four o'clock the next morning, the Defendant and Gonzales returned to the Ramirez home in Guadalupe, where Ramirez met them at the door. Gonzales told Ramirez, evidently referring to Ybarra, "That dude's gone. That vato [dude] is gone," simultaneously making a throat-cutting gesture with his hand. The Defendant corroborated this, saying, "He's gone." The Defendant later told a group of people at the house that they had cut Ybarra's throat. The Defendant left the house, but returned a few hours later. He told one of the people at the house that he had to go meet a man named Gilbert Valle to pick up some money.

About two or three days later, the Defendant told Ramirez that he had pulled Ybarra's head back and cut his throat. About the same time, the Defendant told another friend that he had killed Ybarra by pulling back his head and cutting his throat and that the Defendant and Gonzales had stabbed Ybarra a couple of times and poked him in the eye with a knife. The Defendant also told his friend that Ybarra struggled to get out of the back seat of the pickup. The Defendant said Gilbert Valle had paid them money and drugs to kill Ybarra in revenge for Ybarra having stabbed Valle's brother.

Five days after the party, Ybarra's body was found in the desert in Maricopa County on the Gila River Indian Reservation. Experts testified at trial that Ybarra died from a slash wound to the neck that severed his trachea and carotid artery and that he had also suffered stab wounds to the eye and arm. A search of Gonzales' truck revealed blood stains on the upholstery in the section of the cab behind the front seat. The blood in the truck could have been the victim's but could not have come from either Gonzales or the Defendant.

The jury found the Defendant guilty of conspiracy to commit murder and first-degree murder. He was sentenced to life imprisonment without the possibility of release or parole for twenty-five years on each count. The sentences were to run concurrently.

The Defendant filed a petition for post-conviction relief in the trial court alleging that the superior court had no jurisdiction of the charges against him. He proved that he was an enrolled member of the Gila River Indian Community, and he asserted that the crimes were committed on an Indian reservation. Given these facts, he argued, and continues to argue, that the federal court has exclusive jurisdiction over the crimes. He relies on the provisions of 18 U.S.C. sections 1152 and 1153, which read:

Section 1152

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

Section 1153

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

As used in this section, the offenses of burglary and incest shall be defined and punished in accordance with the laws of the State in which such offense was com-

mitted as are in force at the time of such offense.

In addition to the offenses of burglary and incest, any other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

While conspiracy to commit murder is not one of the crimes listed in 18 U.S.C. section 1153, the federal courts have jurisdiction of that offense pursuant to the general federal conspiracy statutes, 18 U.S.C. sections 371 and 1117, when the underlying crime of murder occurs on the reservation. *See U.S. v. Begay,* 42 F.3d 486 (9th Cir.1994).

The trial court, agreeing with the Defendant as to the charge of murder but not as to the charge of conspiracy, ruled:

> The court finds Mr. Robles is an Indian and was a member of the Gila River tribe at all relevant times.

> There is a presumption that a murder, the act of killing, occurred where the body was found. There is nothing in the record to refute that presumption. Therefore, the court finds an Indian killed a non-Indian on an Indian reservation, which results in exclusive jurisdiction being vested in federal court.

> As to the conviction for conspiracy, the court finds there is sufficient evidence from which one can conclude that a conspiracy occurred prior to and at the time the three individuals got into the pick-up truck in Guadalupe, Arizona. The State of Arizona had jurisdiction over the crime of conspiracy to commit first degree murder.

> As to the conviction for murder in the first degree only, the court finds the State of Arizona did not have jurisdiction....

The Defendant petitions for review of the trial court's decision. The Defendant also filed a direct appeal from his conviction for conspiracy in the trial court, and we recently affirmed that conviction in *State v. Robles,* 1 CA–CR 92–0559 (Ariz.App. Jan. 19, 1995).

## THE TRIAL COURT HAD JURISDICTION OF THE CHARGE OF CONSPIRACY TO COMMIT MURDER

In *State v. Verdugo,* 183 Ariz. 135, 901 P.2d 1165 (App.1995), we held that a defendant charged with a crime in state court who claims that the federal court has exclusive jurisdiction of the offense has the burden of demonstrating that the jurisdiction over a particular crime is vested exclusively in the federal court. *Id.* at 7. To establish conspiracy to commit murder, under Arizona law, the prosecution must prove that the defendant (1) with intent to promote or aid in a murder (2) agreed with another person that at least one of them would commit murder. Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–1003(A) (1989). Here, reviewing all of the testimony, there was sufficient evidence of an agreement which occurred off the reservation to meet each of these elements. The proof supports the strong inference that when the Defendant and Gonzales left the party with the victim they had already agreed to kill him, and they were taking steps to accomplish that end. Elements of the crime of conspiracy, indeed the completed crime of conspiracy, were committed off the reservation. For that reason, the state had jurisdiction of the conspiracy even though the conspiracy and the murder carried over to the reservation.

There are several cases which support our conclusion. The most directly on point is *State v. Lane,* 112 Wash.2d 464, 771 P.2d 1150 (1989). In *Lane,* the defendants, bent on revenge for the victim having testified against them in an earlier case, drove to the victim's home in Tacoma, Washington. *Id.* at 1151. They seized her and put her in the trunk of a car. *Id.* They took her to a remote wooded area within the confines of the federal military reservation, Fort Lewis, and there they killed her. *Id.* at 1151–52.

The defendants were charged with murder in the state court. *Id.* They argued that the state had no jurisdiction because the offense had occurred on land within the exclusive jurisdiction of the United States. *Id.* The Supreme Court of Washington expressly found that Fort Lewis was on land within the

exclusive jurisdiction of the United States. *Id.* at 1153. The court rejected the defendant's argument that only the federal court could prosecute him, saying:

The State of Washington may exercise jurisdiction over a criminal offense if an essential element of the offense occurred within the state but outside the land ceded to the federal government (where the offense culminated). Premeditation is an essential element of aggravated first degree murder and the State has made a sufficient showing of facts to establish that this element of the offense occurred within this state outside the federal lands in question.

*Id.* at 1152.

The court based its conclusion on Washington's criminal jurisdiction statute which provided that persons who committed any crime, in whole or in part, within the state were liable to punishment under state law. *Id.* at 1153. Under Washington case law, an offense was committed "in part" when an essential element of the offense was committed within the state.

Arizona's criminal jurisdiction statute, A.R.S. section 13–108 (1989), is substantially the same as Washington's. The Arizona statute reads:

A. This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which such person is legally accountable if:

1. Conduct constituting any element of the offense or a result of such conduct occurs within this state....

The case before us is legally indistinguishable from *Lane*, which we believe was correctly decided. *See also State v. Kirksey*, 647 S.W.2d 799, 804 (Mo.1983) (prosecution of prisoners' escape from federal courthouse, which was within the exclusive jurisdiction of the federal government, was proper in state court because one person who helped in the escape was on the street which was on state land); *Leonard v. United States*, 500 F.2d 673, 674 (5th Cir.1974) (where the victim was kidnapped from Air Force base, which was within the exclusive jurisdiction of the federal government, and raped at motel off base, federal court had jurisdiction over the charge

of rape because "[a] sovereign has jurisdiction to try an offense where only a part of that offense has been committed within its boundaries").

The Defendant relies on *United States v. Torres*, 733 F.2d 449 (7th Cir.), *cert. denied*, 469 U.S. 864, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984), for the proposition that if any portion of a conspiracy is committed inside the reservation, then the federal court has exclusive jurisdiction over the offense. The facts in *Torres* are similar to the facts in this case. In *Torres*, the two Indian co-defendants drove off a reservation and met the victim, who was not an Indian. *Id.* The co-defendants overpowered the victim, forced him into their car, and then drove back onto the reservation and killed him. *Id.* at 452–53. The defendants were convicted in federal court of second-degree murder, conspiracy to commit murder, and kidnapping. *Id.* at 453. On appeal, they argued that the state court had jurisdiction of the charge of conspiracy to commit murder and the federal court did not have jurisdiction of that charge because the crime occurred off the reservation.

The United States Court of Appeals for the Seventh Circuit upheld the convictions. The court stated:

[U]nder 18 U.S.C. § 1152, the Federal court has exclusive jurisdiction to punish an Indian who participates in a conspiracy to murder a non-Indian within the federal territory of the Menominee Indian Reservation, provided the Indian has not been punished by the tribe and that the crime is not in the exclusive jurisdiction of the tribe. Such federal jurisdiction attaches if "at least one of the conspirators commits an overt act in the territorial jurisdiction of the United States district court."

*Id.* at 459 (citations omitted).

The only question actually presented in *Torres* was whether there was federal jurisdiction over the crime of conspiracy to commit murder. We have no doubt that question was correctly decided in *Torres*, as we have no doubt that the defendant in the case before us could have been prosecuted for conspiracy to commit murder in the federal court. Conspiracy under federal law requires proof that two or more persons agree

to commit murder and one of them must do some overt act to further that end. 18 U.S.C. § 1117. Since the victim in this case was presumably killed on the reservation, the Defendant and Gonzales, intending to kill him, necessarily crossed the reservation line and drove him to the site where the killing occurred. This act of transporting the victim with the intention of killing him constituted the federal crime of conspiracy to commit murder. See Begay, 42 F.3d at 498. But the fact that the federal court had jurisdiction of the offense does not mean that state jurisdiction is preempted. The statement in Torres that federal jurisdiction was exclusive was both dictum and unnecessarily broad.

The State rebuts Torres by reference to State v. Kills on Top, 241 Mont. 378, 787 P.2d 336, 343 (1990), in which the Montana Supreme Court read Torres narrowly. In Kills on Top, the defendant and three other people kidnapped the victim on state land, assaulted him, and over the course of many hours drove around with the victim in the trunk of their car. Id. at 338–40. On at least three occasions, while the victim was in the truck, the defendants drove through an Indian reservation. Id. The defendants killed the victim off the reservation. The defendant, citing Torres, claimed that he could not be prosecuted in the state court for kidnapping because a part of the offense had occurred on the reservation where federal jurisdiction was exclusive. Id. at 343. The Supreme Court of Montana disagreed. Id. Referring to language in Torres that observed that the "major part" of the crime in Torres had occurred on the reservation, the Montana court held that since only a minor part of the offense which it was reviewing occurred on the reservation, Torres did not foreclose state jurisdiction. Id.

We do not believe that the key to which sovereign has jurisdiction lies in where the major factors that constitute the elements of the crime occurred. Even if that were the test, however, we believe the state would have jurisdiction of the charge of conspiracy in this case. While the murder which presumably occurred on the reservation in the case before us cannot be considered "minor," the actual murder itself was not a necessary element of the offense of conspiracy to commit murder. The evidence strongly suggests that the agreement to kill the victim and the act of getting the victim into the vehicle and driving him to an isolated place occurred outside the reservation. As we have already observed, the entire offense of conspiracy to commit murder was complete before the Defendant ever entered the reservation.

■ In our opinion, 18 U.S.C. sections 1152 and 1153 were intended to bestow exclusive preemptive jurisdiction on the federal courts only when the crime occurs on a federal enclave and when no elements of the crime occur outside that enclave. We have found no case, except for the dicta in Torres, which holds otherwise. See Robert N. Clinton, Criminal Jurisdiction Over Indian Lands; A Journey Through a Jurisdictional Maze, 18 Ariz.L.Rev. 504, 523 n. 94 (1976) (discussing cases under 18 U.S.C. section 1152 which provide for exclusive federal jurisdiction—none of which consider crimes also committed on state lands).

In conclusion, we hold that both the United States and the State of Arizona had jurisdiction of the charge of conspiracy to commit murder, and the state jurisdiction was not preempted. The trial judge was correct in refusing to grant relief as to the conspiracy conviction.

### ANY ERROR IN THE TRIAL COURT'S FINDING REGARDING THE RACE OF THE VICTIM IS HARMLESS

■ The Defendant argues that the statement in the trial court's ruling on the petition for post-conviction relief that the victim was a non-Indian was not supported by the evidence. The Defendant argues that this conclusion by the trial court is important for its effect in terms of collateral estoppel. The Defendant does not explain how that finding might be used against him in a subsequent prosecution. The State asserts that the finding that the victim was a non-Indian would be irrelevant in a subsequent prosecution for murder in the federal court because all that will be necessary to bestow jurisdiction on the federal court is proof that the Defendant was an Indian who killed another

person on an Indian reservation. *See* 18 U.S.C. § 1153.

The testimony of the expert witness who gave his opinion about the race of the victim may be slightly ambiguous,[1] but we need not speculate about that nor need we speculate as to how the race of the victim might become relevant in some future prosecution because we do not believe the trial judge's finding will bring the doctrine of collateral estoppel into play.

The elements of collateral estoppel are: the issue sought to be relitigated must be precisely the same issue and must have been adjudicated in the previous litigation; a final decision on the point in question must have been *necessary* for the judgment in the prior litigation; and there must be mutuality of parties. *State v. Jimenez*, 130 Ariz. 138, 140, 634 P.2d 950, 952 (1981) (emphasis added). In this case, establishing the race of the victim was not necessary to the trial court's decision to grant the petition for post-conviction relief on the charge of murder. All that was required for the trial court to determine was that a murder was committed by an Indian on the reservation. Thus, the Defendant will not be collaterally estopped from showing that the victim was or was not an Indian in any future proceedings.

The petition for review is granted, and relief is denied.

EHRLICH and NOYES, JJ., concur.

1. At trial Dr. Walter H. Birby, a forensic anthropologist for the Medical Examiner's Office in Pima County testified regarding the race of the victim:

Q. Doctor, were you are to determine the race of [the victim]?
A. Yes.
Q. And how were you able to do that? How do you go about that?
A. There are ... three major racial stock that we think about in the United States; Caucasian or Anglo, basically Mongoloid individuals, who are Indian, and then American or Afro–American Blacks. So those determinations are usually based on certain dental traits, certain dental characteristics that we can see in the teeth. The shape of the face, the shape of the skull itself, the hair, very frequently plays a part in determination. It's microscopic characteristics.
Q. And did you make a determination in this case?
A. I made a determination in this case, yes.
Q. And what was that determination?
A. There was a bit of Anglo or White racial characteristics as far as the dead tissue was concerned. And there was also some Mongoloid, or basically Mongoloid or American Indian-type characteristics.
Usually when you have these two racial traits in conjunction with each other, we're usually talking about somebody who is Chicano or Mexican–American or Mexican National, some—a blend of White and American Indian.